**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**Civil Action No. 11-cv-691 (Judge:_____)**

**STATE OF NEW MEXICO, Plaintiff,**

**v.**

**UNITED STATES OF AMERICA**;

**KENNETH L. SALAZAR,** Secretary of the Department of Interior, in his official capacity;

**MICHAEL L. CONNOR,** Commissioner of the Bureau of Reclamation, in his official capacity;

**FILIBERTO CORTEZ**, Manager of the El Paso Field Division of the Bureau of Reclamation in El Paso, Texas, in his official capacity;

**U.S. BUREAU OF RECLAMATION**, a federal agency;

**U.S. DEPARTMENT OF INTERIOR**, a federal agency,

**Defendants.**

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

Plaintiff State of New Mexico, acting by and through the New Mexico Attorney General Gary K. King, and through the undersigned Assistant Attorneys General, respectfully submits this Complaint against named Defendants, stating in support as follows:

**I.     NATURE OF THE ACTION**

1.     Plaintiff State of New Mexico is a State of the United States.  It brings this action in its sovereign capacity under the United States Constitution and the Constitution of the State of New Mexico.  New Mexico exercises jurisdiction over all its waters, both surface and

underground, under its police power to regulate in the public interest and under the constitutionally recognized public ownership of waters in the state.  N.M. Const. art. XVI, Sec. 2.  Plaintiff State of New Mexico acts herein also on behalf of its interests as a recipient of state taxes collected on revenues received from crops produced in New Mexico, revenues generated from fishing, bird watching and other recreational activities on the Rio Grande, and as a sovereign with special solicitude to raise injuries to waters and lands within New Mexico's borders.  In this case, the harm complained of threatens the sustainable riverine environment, related aquifer, and the environment, flora, and fauna that rely on the Rio Grande and its connected groundwater.  New Mexico also acts herein, *in parens patriae,* on behalf of the interests of all of its citizens who are being harmed by the denial of New Mexico's rightful allocation of surface water in the Rio Grande Project by Defendants' illegal and wrongful actions in operating the Rio Grande Project in violation of federal and state law.

2.      New Mexico seeks relief under the Declaratory Judgment Act 28 U.S.C. §§ 2201.  New Mexico seeks a declaration by the Court that the Defendants, acting through the United States' Bureau of Reclamation ("BOR") or Filiberto Cortez acting ultra vises, do not have the authority unilaterally to release or reduce Plaintiff State of New Mexico's Compact Credit Water held in Elephant Butte Reservoir for any purpose, including a purpose of meeting obligations incurred by the BOR in the 2008 Operating Agreement.

3.      New Mexico seeks by this action an order permanently enjoining and declaring void the final agency action of federal defendants in executing and implementing a 2008

2

Operating Agreement as in violation of the Water Supply Act of 1958 ("WSA"), 43

U.S.C. § 390b(d) (2003), on the grounds that it seriously affects the purposes for which

the Rio Grande Project was authorized, surveyed, planned, or constructed or affects a

major operational change of the Rio Grande Project without approval by Congress.  The

2008 Operating Agreement amounts to a major operational change by, *inter alia*,

allowing long-term carry over storage and materially altering the distribution of project

water without Congressional authorization.  The 2008 Operating Agreement has resulted

in New Mexico project allocations being more than 150,000 acre-feet per year less than

they would have been under historic operations.  Therefore, the 2008 Operating

Agreement is a significant change in project operations which seriously affects the

purposes for which the project was authorized or constructed, and involves major

operational changes.  The 2008 Operating Agreement was, however, arbitrarily and in

violation of law accomplished by Defendants without the required approval by Congress.

4.     New Mexico seeks relief under the Declaratory Judgment Act 28 U.S.C. §§ 2201;

challenge the Defendants final agency action in executing the 2008 Operating Agreement

under the APA, 5 U.S.C. §§ 701-706 and the Rio Grande Compact, Pub. L. (May 31,

1939).

5.     New Mexico seeks relief under the National Environmental Policy Act, 42 U.S.C. §§

4331, *et seq*. ("NEPA").  Specifically, the Defendants undertook a major federal action

significantly affecting the environment without any technical review of the impacts to the

human environment, without consideration of cumulative effects, without appropriate

consultation with New Mexico, without adequate public review of the action proposed, and without any consideration of alternative actions, as required by NEPA. Defendants not only did not take the requisite "hard look" at the action, but the action addressed in the environmental compliance document issued by the Defendants is not in fact the action Defendants actually implemented the following year. On information and belief, the March 2008, Operating Agreement was materially different from the 2007 Operating Procedures described in the environmental compliance document, but Defendants did not perform required supplemental analyses to comply with NEPA for the actions ultimately taken. New Mexico seeks a declaration that Defendants violated NEPA, permanent injunctive relief against Defendants, and an order that Defendants immediately cease operating the Project pursuant to the 2008 Operating Agreement until they have performed the necessary NEPA procedures to evaluate the effects on the human environment of their proposed action, including hydrologic studies of operational effects of the actual action taken and not some other.

6.     New Mexico seeks an order declaring that because the 2008 Operating Agreement violates state law, BOR is in violation of section 8 of the federal Reclamation Act (43 U.S.C. § 383) when it operates the Rio Grande Project in accordance with the 2008 Operating Agreement.

7.     New Mexico and her citizens have been, are being, and will continue to be harmed by Defendants' failure to operate the Rio Grande Project in accordance with federal law. Unless the relief prayed for herein is granted, New Mexico, its citizens and wildlife,

fisheries, aquifers and associated interdependent ecosystems will continue to suffer on-going harm.

## II.    JURISDICTION AND VENUE

8.    This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) because this action arises under the Constitution and laws of the United States, including the Water Supply Act 43 U.S.C. § 390b (d), the APA, 5 U.S.C. §§ 701-706, the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4331 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and the Rio Grande Compact, ch. 155, 53 Stat. 785 (1939).  This Court has jurisdiction to review agency action and to order the relief sought in this civil action pursuant to 28 U.S.C. § 1346 (United States as defendant) and 28 U.S.C § 2201-02 (declaratory and injunctive relief).  New Mexico does not seek monetary damages herein.

9.    An actual, justiciable controversy now exists between Plaintiff and Defendants, and the requested relief is therefore proper under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 701-706.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this is a civil action in which each defendant is either an officer of the United States or an agency of the United States, a substantial part of the events giving rise to the claims herein occurred within this judicial District, the public waters and resources in issue are located in this District, and the harm complained of herein will continue in this District if the relief prayed for herein is not granted.

11.     The federal government has waived sovereign immunity pursuant to 5 U.S.C. § 702.

### III.     PARTIES

12.     Plaintiff State of New Mexico is a State of the United States.  As such, it has jurisdiction

and since statehood has exercised that jurisdiction to protect and regulate under its police

powers the waters of the state, both surface and underground.  "The unappropriated water

of every natural stream, perennial or torrential, within the state of New Mexico, is hereby

declared to belong to the public and to be subject to appropriation for beneficial use, in

accordance with the laws of the state." N.M. Const. art. XVI, § 2.  Plaintiff State of New

Mexico brings this action based in part on its recognized special solicitude to raise

injuries to its quasi-sovereign interest in waters and lands within its borders.  New Mexico

alleges harm to its waters and lands as well as a financial burden associated with the lost

water resources.

13.     Defendant Kenneth L. Salazar is sued in his official capacity as Secretary of the

Department of Interior, United States Department of the Interior. As such, he bears

responsibility for the arbitrary and capricious and otherwise illegal actions of the federal

defendants herein, and he also has the official authority to implement the remedial relief

ordered by the Court.  Plaintiff is informed and believes, and on that basis alleges, that

Secretary Salazar or his predecessor has approved or adopted the acts and omissions

complained of herein, and thus his actions or omissions arbitrarily and capriciously and

otherwise illegally have violated his mandatory duty to the State of New Mexico and its

citizens to comply with the law.

14.     Defendant Michael L. Connor is sued in his official capacity as Commissioner of the
Bureau of Reclamation, United States Department of the Interior.  In that capacity, he
bears responsibility for the arbitrary and capricious and otherwise illegal actions of the
federal defendants herein, and he also has the official authority to implement the remedial
relief ordered by the Court.  Plaintiff is informed and believes, and on that basis alleges,
that Commissioner Connor or his predecessor has approved or adopted the acts and
omissions complained of herein, and thus his actions or omissions arbitrarily and
capriciously and otherwise illegally have violated his mandatory duty to the State of New
Mexico and its citizens to comply with the law.

15.     Defendant United States Department of Interior ("DOI") is an agency or instrumentality
of the United States.  The DOI oversees and includes the BOR, which is charged with
operating and managing the reclamation projects authorized by Congress in accord with
federal and applicable state law.  DOI has failed to assure operation of the Rio Grande
Project in accord with federal and applicable state law and has otherwise has violated its
legal obligations with respect to the operation and distribution of water from the Rio
Grande Project.

16.     Defendant United States Bureau of Reclamation is an agency or instrumentality of the
United States, within the Department of the Interior.  The BOR is obligated to operate the
Rio Grande Project in accordance with federal laws and New Mexico state water law
made applicable through Section 8 of the Reclamation Act, 43 U.S.C. § 383.

17.     Filiberto Cortez is the Manager of the El Paso Field Division of the Bureau of

Reclamation in El Paso, Texas, and is sued in his official capacity.

### IV.     FACTUAL AND LEGAL ALLEGATIONS

**A.     The Reclamation Act and the Rio Grande Project**

18.     During the late nineteenth and early twentieth centuries, the United States government

undertook numerous programs to encourage non-Natives to participate in a great

westward expansion and settlement, seeking to increase the prosperity and general

welfare of the western territories by adopting policies favoring economic development

through farming and agricultural practices.  It was quickly understood that the water

resources in the arid western territories presented tremendous challenges to permanent

agricultural development, in that the water supply was highly variable and precipitation

during the growing seasons was greatly insufficient to support farming generally.  Due to

the expense of building the necessary infrastructure for the water storage and distribution

projects required to enable vast territories to be irrigated or "reclaimed," western

territorial and state interests convinced the federal government to undertake basin

development projects throughout the west, and thus to support the general welfare of the

entire nation.  As a result, Congress passed the Reclamation Act in 1902, under which the

United States Reclamation Service ("USRS"), precursor to the BOR, quickly embarked

on a massive program of water project development and reclamation.  The program was

initially limited to states and territories with federal lands, the sale of which provided the

funding for the projects.  In 1902, Texas had no federal lands, but Congress amended the
Reclamation Act in 1906 to include Texas in the program.

19.     The United States had recognized sometime before the passage of the Desert Land Act of
1866 that local customs and laws of water rights had of necessity developed differently in
the west from water use customs and laws in the eastern part of the country.  In deference
to such already developed local laws, the United States adopted a strong policy of
deference to the states on water policy, even for development of waters on federal lands.
"[B]y the Desert Land Act of 1877 (c. 107, 19 Stat. 377), if not before, Congress had, in
accordance with principles of western water law, severed the land and waters constituting
the public domain and established the rule that for the future the lands should be patented
separately.  Acquisition of the government title to a parcel of land did not to carry with it
a water right; but all non-navigable waters were left for the use of the public under the
laws of the various arid-land states."  *Ickes v. Fox*, 300 U.S. 82, 95 (1937) (citing *Cal.
Or. Power Co. v. Beaver Cement Co.*, 295 U.S. 142, 162 (1935).

20.     The Reclamation Act specifically incorporates congressional policy of deference to the
water laws of the States and Territories in many of its provisions, including but not
limited to Section 8, 43 U.S.C. § 383.  Section 8 of the Reclamation Act, provides:

> **Vested rights and State laws unaffected**. Nothing in this Act shall be
> construed as affecting or intended to affect or to in any way interfere with
> the laws of any State or Territory relating to the control, appropriation,
> use, or distribution of water used in irrigation, or any vested right acquired
> thereunder, and the Secretary of the Interior, in carrying out the provisions
> of this Act, shall proceed in conformity with such laws, and nothing herein
> shall in any way affect any right of any State or of the Federal

Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof.

21. As the lands along the Rio Grande had long been settled and that river was already the source of water supply disputes among the states of Colorado, Texas, New Mexico, and the nation of Mexico, the USRS determined to develop the Rio Grande Project ("Project").  On January 23, 1906, in compliance with Section 8 of the Reclamation Act, the USRS filed a water appropriation notice under the newly passed territorial law of New Mexico, Section 22, Chapter 102 of the 1905 laws, entitled, "An Act Creating the Office of Territorial Irrigation Engineer to Promote Irrigation Development and Conserve the Waters of New Mexico for the Irrigation of Lands and for other Purposes, approved March 16, 1905.  That filing declares the intent of the United States to appropriate: "[a] volume of water equivalent to 730,000 acre-feet per year requiring a maximum diversion or storage of 2,000,000 miners inches said water to be diverted or stored from the Rio Grande River (sic) at a point described as follows: Storage dam about 9 miles west of Engle New Mexico. . . ."  The Project ultimately developed was somewhat different and larger, the earlier notice being supplemented by another in 1908 that indicated a more expansive appropriative intent.

22. The Project consists generally of two storage dams in New Mexico, namely Elephant Butte Reservoir and Caballo Dam (located just 25 miles south and operated in conjunction with Elephant Butte Reservoir).  From storage at these dams and reuse of return flows, the Project supplies about 155,000 irrigable acres, 88,000 located within Elephant Butte Irrigation District ("EBID") in New Mexico, and 67,000 in Texas, mostly

located in El Paso Water Improvement District No. 1 ("EPCWID") (collectively "the

districts"), with water for irrigation, and, to the extent authorized by contracts executed

under the Miscellaneous Purposes Act, municipal water supply.  The United States is also

responsible for delivery of 60,000 acre feet of Rio Grande water annually to Mexico,

adjusted in times of shortage, pursuant to the Convention for the Equitable Distribution of

the Waters of the Rio Grande of May 21, 1906 between the United States and Mexico, 34

Stat. 2953 ("1906 Treaty").

**B.**     **Elephant Butte Reservoir Water Pools**

23.     Elephant Butte Reservoir contains three pools of stored water within what is generally

        termed Project Storage: 1) Usable Water, 2) Credit Water, and 3) San Juan-Chama water.

        Project Storage is equal to the combined volumes of Usable Water in Elephant Butte and

        Caballo Reservoirs, plus Credit Water and San Juan Chama water in Elephant Butte

        Reservoir. See, Compact Article I and P.L. 97-140.

24.     Usable Water is defined by the Rio Grande Compact at Article 1: "Usable Water is all

        water, exclusive of credit water, which is in project storage and which is available for

        release in accordance with irrigation demands, including deliveries to Mexico."  (San

        Juan Chama Project Water is now also stored in Elephant Butte Reservoir in accordance

        with Public Law 97-140, but is not at issue here.)  BOR allocates and releases Usable

        Water to EBID, EPCWID, (as described below in sections D and E) and the Republic of

        Mexico.

25.     Credit Water is water stored in Elephant Butte Reservoir pursuant to the Rio Grande

        Compact and administered by the Rio Grande Compact Commission (also referenced

        herein as Commission).

**C.     Rio Grande Compact and New Mexico's Credit Water**

26.     The Rio Grande Compact is an interstate compact executed by Colorado, New Mexico,

        and Texas under their sovereign authority as states of the United States under the

        Compact Clause of the United States Constitution, Art. I, § 10, cl. 3.  It is also federal law

        enacted as Public Act No. 96 by the 76th Congress of the United States on May 31, 1939.

        Article XII of the Compact states that the Rio Grande Compact Commission administers

        the provisions of the Compact.  Article VI of the Compact provides for the computation

        of all credits and debits of Colorado and New Mexico by the Commission.  Article VI

        credits (i.e., Credit Water) are computed annually and approved by the Commission at its

        annual meeting.  The Compact at Article I defines Credit Water as: "that amount of water

        in project storage which is equal to the accrued credit of Colorado, or New Mexico, or

        both."

27.     During the Rio Grande Compact Commission's 67th Annual Meeting (March 23, 2006),

        the Commission expressly warned and directed BOR that accrued Credit Water was to be

        held constant during the calendar year and that Reclamation could not unilaterally

        allocate or release the States' credits, including reductions for evaporation losses:

                1. the Engineer Advisers requested that the Commission direct that credit
                water be held constant during the year, and 2. that the Commission direct
                the Engineer Advisers to meet if the total combined accrued credit water

12

exceeds 150,000 acre-feet and Usable Water is less than a full allocation or if the combined accrued credit water exceeds 50 percent of Project Storage and make a recommendation to the Commission regarding optimum use of water in Project Storage, and 3. that the Commission direct Reclamation to allocate or release credit water only as directed by the Commission.  The recommendations were approved by the Commission.

28.     The total amount of Credit Water in Elephant Butte Reservoir for 2011, as authorized by the Commission at its 72nd Annual Meeting in March 2011, is 166,300 acre-feet.  New Mexico is allocated 164,700 acre-feet and Colorado has 1,600 acre-feet.

29.     On information and belief, in June 2011, BOR or Mr. Filiberto Cortez acting *ultra vires*, reduced the accrued Credit Water from 166,300 acre-feet to 100,000 acre-feet.  This reduction was made without New Mexico's or the Commission's approval.

30.     By reducing New Mexico's allocation of Credit Water, BOR or Mr. Cortez, acting *ultra vires*, increased the Usable Water to EBID and EPCWID by 65,000 acre-feet.  This increase in Usable Water acts like an accepted "relinquishment" to Texas of Credit Water under the Rio Grande Compact but without New Mexico's consent or ability to negotiate terms and conditions with Texas.

31.     On information and belief, in July 2011, BOR or Mr. Cortez of Reclamation authorized the release of approximately 550 acre-feet of Credit Water from Elephant Butte Reservoir without the consent of New Mexico or approval of the Commission.

**D.**     **Historic Operation of the Rio Grande Project and the Usable Water Pool**

32.     The BOR operated the Project from its beginning until 1980, when the BOR transferred various Project properties not including Elephant Butte Dam, Caballo Dam, and other diversion dams, to EBID and EPCWID.  On information and belief, for all the years of Project operation up to the time of transfer, the BOR annually operated the Project in accordance with its obligation to deliver equal amounts of Project supply to each irrigated acre, regardless of which state or district the acre was in, and to Mexico as required by the 1906 Treaty.  BOR's allocations were made on the basis of water available in storage for release and on annually variable gains and losses.  After the title transfer, BOR delivered directly to each district leaving to the districts the obligation to assure appropriate and equal deliveries to the lands within their districts.

33.     On information and belief, until approximately 2006, when the BOR unilaterally made a one-time change in distribution method, the BOR itself (or after 1980 though delivery to the irrigation districts), allocated available water on an annual basis.  In accordance with the percentage of irrigable lands in the New Mexico and Texas parts of the Project, EBID was allocated 88/155 of the available supply and EPCWID, 67/155.  This is a percentage of approximately 57% to EBID and 43% to EPCWID.  The effect of this percentage distribution was to ensure, in accordance with federal policy, that every acre on the Project received an equal amount of water on an annual basis.  *See,* affidavit of Filiberto Cortez, attached as Ex. A.  This equal distribution to all Project lands also assured the

states fair treatment in the distribution of federally developed waters because each acre received the same amount of water whether that acre was in Texas or New Mexico.

34.    The use of annual accounting meant that, for the history of Project operations until recently, the amount of water available for allocation between the districts was, with certain exceptions defined by statute or by the Rio Grande Compact Commission, tied to the actual water in storage in Elephant Butte and Caballo Reservoirs. *See*, affidavit of Filiberto Cortez, attached as Ex. A, ¶ 18.

35.    The 2008 Operating Agreement, by contrast, recognizes long-term storage, also known as carryover accounting, whereby water can be stored indefinitely and that stored water will be accounted apart from the calculation of water available for allocation in a given year. Neither Project operations nor Project purposes have ever allowed long-term or carryover storage.  That is, the historic beneficial uses of Project water included irrigation, flood control, power production, incidental municipal and industrial uses to the extent they do not interfere with irrigation, and short term Project storage, but never long term storage allowing year to year carryover of either district's allocated water.  The Congressional authorization for the Rio Grande Project has never included long-term project storage, but rather only short term storage for allocation on an annual basis.  Further, except for San Juan Chama water which is not in issue herein, the BOR has never interpreted Congressional authorization for Project purposes to include long-term storage.

36.    In 2006 and 2007, BOR unilaterally adopted Project operational changes.  Although this unilateral action was improper, the changes were represented to be one-time-only,

pending the result of negotiations among the districts and BOR.  On information and belief, throughout 2006 and 2007, the BOR engaged in ongoing discussions with the EBID and EPCWID relating to Project operations and claims made by the districts seeking revisions in project allocations.

37.     In 2007, the BOR issued various environmental documents purporting to satisfy the requirements of the NEPA to "implement adjusted operating procedures" for the Project. On June 11, BOR distributed an "Environmental assessment and Finding of No Significant impact for the Bureau of Reclamation Federal Rio Grande Project New Mexico-Texas Operating Procedures, Dona Ana, Sierra, and Socorro Counties, New Mexico and El Paso, Texas," ("EA and FONSI" attached as Ex. B). This document is inadequate on its face to meet the BOR's obligations under NEPA.  The only alternatives analyzed were the no action alternative and the proposed action.  The document indicates that there were no cooperating agencies.  Ex. B, at 1.  The document indicates no agencies were consulted other than the entities to whom project water is delivered.  Ex. B, at 9, table 4.  The document stated that; "There is no uncertainty or unknown risk because the Operating Procedures merely formalize how Reclamation has operated the Rio Grande Project over time." Ex. B, at ii.  This statement is false.  The Operating Procedures examined in the document constituted a significant, material departure from the BOR's historic operation of the Project.

E.    **BOR's Implementation of the Operating Agreement**

38.    In March 2008, the negotiations begun in 2006 and 2007 resulted in a settlement of

litigation among BOR, EBID and EPCWID.  This settlement embodied some of the

Operating Procedures described in the EA and FONSI, as well as other operational

changes, in a document titled the "Operating Agreement."  The 2008 Operating

Agreement allows for long-term, carryover storage for the districts, in contradiction to

historic practices.  This in turn results in the likelihood of unequal distribution as between

acres of irrigable land in Texas and New Mexico, in contravention of Reclamation law

and policy.  Thus, less than one year after the affidavit of Filiberto Cortez, attached as Ex.

A, represented in federal court that the BOR had historically operated the Project

according to an annual accounting, BOR executed an 2008 Operating Agreement that

wrongfully and significantly changed that historical operation.  The changes to historic

operation in the 2008 Operating Agreement seriously affect the purposes for which the

Project was authorized.

39.    The BOR did not, as required by Section 8 of the Reclamation Act, seek a permit from

the New Mexico State Engineer for the change in purpose of use reflected in its decision

to devote storage space in Elephant Butte Reservoir to long-term storage of Project water

for the benefit of individual districts, and for municipal and industrial uses supplied

through those districts.

40.    Because of the violation of federal law in failing to apply for a state law permit for a

change in purpose of use, no analysis was done to determine whether the 2008 Operating

Agreement violates state law in other ways.  For example, the Operation Agreement may violate state law by the promotion of waste—because long-term storage allows for water to remain indefinitely unused, evaporation of water will occur.  The waste of water is contrary to state law.  Under state law, "beneficial use shall be the basis, the measure and the limit of the right to the use of water."  N.M. Const. art. XVI, Sec. 3.

41.    Under Section 8 of the Reclamation Act, BOR is obligated to follow state law.  Because the 2008 Operating Agreement violates state law, BOR is in violation of Section 8 of the federal Reclamation Act when it operates the Project in accordance with the 2008 Operating Agreement.

42.    On information and belief, in violation of law, BOR conducted no hydrologic analyses of how the 2008 Operating Agreement's significant and material departures from historic operations would affect Project purposes.  The materiality and significance of the 2008 Operating Agreement's departures from Project purposes were foreseeable at the time of the EA and FONSI.  BOR's allocations of Project supply to EBID have dropped precipitously from allocations in previous years.  This precipitous drop relative to EPCWID's allocation could not have occurred under the historic operations of the Project.

43.    The new and drastically different operating procedures have caused substantial harm to New Mexico and its citizens.  Water that would have been allocated to the two districts on an annual basis under historic practice is instead accounted to the districts' carryover water account.  In the past three years, BOR has failed to allocate water in storage on an

annual basis to both districts.  Placing water in long-term storage withholds water from the next year's allocation.  Thus, the amount of water that is divided in accordance with the percentage established in the Project of 57% to EBID and 43% to EPCWID is artificially reduced prior to the percentage distribution.  The result is that New Mexico has received considerably less water than it would have received under the historic practice of annual accounting without carryover accounts.  The 2008 Operating Agreement thus inequitably and unsustainably benefits EPCWID to the detriment of New Mexico.

44.    The EA and FONSI claim that: "There is no uncertainty or unknown risk because the Operating Procedures merely formalize how Reclamation has operated the Rio Grande Project over time.  The procedures used for accounting of the waters available to the Project and the Project water users will be adjusted to account for water allotted to each of the irrigation districts but not utilized by said districts during the water year.  *Overall use of water by the project will not change.*" (emphasis added) Ex. B at ii, No. 5.  These statements are false.  The overall use of water by the Project has drastically changed in that approximately 150,000 acre-feet less per year has been delivered to New Mexico than was delivered prior to the 2008 Operating Agreement.

45.    The 2008 Operating Agreement contains a variety of provisions inequitable to New Mexico.  Not only does the 2008 Operating Agreement illegally and inequitably allow for long term storage, but through sleight of hand and accounting practices it also debits EBID for all carriage and groundwater depletions in the system, regardless of whether

those losses are attributable from groundwater pumping in New Mexico or Texas. That is, by changing the diversion ratio, the 2008 Operating Agreement requires EBID to pay for system inefficiencies admittedly caused by pumping in Texas. This accounting change is inequitable and illegal and causes harm throughout the Rio Grande Valley in New Mexico.

46.     The actual significant impacts directly resulting from the 2008 Operating Agreement are quite the opposite of the representation in the EA and FONSI that there would be no significant impacts from the federal action of changing the operating procedures. Since implementation of the 2008 Operating Agreement:

a.      Allocation of Rio Grande Project water under the 2008 Operating Agreement has been significantly different than allocation in previous years with similar Project water supplies. A comparison of allocation under full water supply conditions for the period of 2008–2010 to previous years of similar supply shows that:

b.      EBID has incurred a decrease in annual Rio Grande Project allocations in the range of 149,160 up to 189,110 acre-feet, or -30.1% to -38.2% of its historical allocation. This decrease in allocation reflects operations that occurred during the past three years as accounted by Reclamation.

c.      EPCWID has benefited with an increase in annual Rio Grande Project allocations in the range of 140,590 to 176,170 acre-feet, or +37.3% to +46.7% more than its historical allocation, which is also in excess of the amount that has been considered to be necessary for a full water supply to the District.

20

    d.      This large decrease in EBID's allocation is unwarranted based on historic operations delivering equally to all authorized project lands.  The reduction in EBID's allocation in each of these full-supply years is greater than the annual diversion of water by the City of Albuquerque, and approximately three times the amount of water consumed by Albuquerque in a year.

    e.      The 2008 Operating Agreement has significantly changed the proportion of water delivered to each of the districts.

**FIRST CLAIM FOR RELIEF: DECLARATORY JUDGMENT AND INJUNCTION AGAINST BOR**
(BOR has no legal authority to reduce or release New Mexico's Credit Water)

47.    Plaintiff State of New Mexico realleges and incorporates by reference paragraphs 1 through 46 above, as though fully set forth herein.

48.    This Court is authorized to grant the relief requested herein under the Declaratory Judgment Act 28 U.S.C. §§ 2201 (declarative relief) and the APA, 5 U.S.C. §§ 701-706.

49.    The Rio Grande Compact is an interstate compact and federal law enacted as Public Act No. 96 by the 76th Congress of the United States on May 31, 1939.

50.    Pursuant to Article XII of the Compact, the Rio Grande Compact Commission administers the provisions of the Compact.

51.    Pursuant to Article VI of the Compact, "all credits and debits of Colorado and New Mexico shall be computed for each calendar year;" and "such credits and debits shall be

reduced annually to compensate for evaporation losses in the proportion that such credits or debits bore to the total amount of water in such reservoirs during the year."

52.     Pursuant to Article VII of the Compact, New Mexico has sole authority over any decision to relinquish credit water, such relinquishments creating important concomitant storage rights under the Compact.  New Mexico "may relinquish accrued credits at any time, and Texas may accept such relinquished water, and in such event the state, or states, so relinquishing shall be entitled to store water in the amount of the water so relinquished."

53.     BOR's unilateral action to reduce or release New Mexico's Credit Water violates New Mexico's rights under the Compact and is not authorized by the Rio Grande Compact.

54.     Pursuant to the Rio Grande Compact, 28 U.S.C. §§ 2201, and the APA, Plaintiff requests that the Court declare that unless specifically authorized by New Mexico and the Rio Grande Compact Commission:

a.      BOR is not authorized to release New Mexico's Compact Credit Water stored in Elephant Butte Reservoir to Caballo Reservoir or to any other Reclamation facility, and

b.      BOR is not authorized to reduce New Mexico's Compact Credit Water during the calendar year for any purpose, including evaporative loss.

55.     Plaintiff further requests that Reclamation be enjoined from any further reductions or releases of New Mexico's Credit Water unless such actions are specifically authorized by New Mexico and the Rio Grande Compact Commission.

**SECOND CLAIM FOR RELIEF: DECLARATORY JUDGMENT AND INJUNCTION AGAINST MR. FILIBERTO CORTEZ, IN HIS OFFICIAL CAPACITY AS MANAGER OF THE EL PASO FIELD DIVISION OF THE BUREAU OF RECLAMATION**
(Mr. Cortez's actions of reducing and releasing New Mexico's Credit Water were *ultra vires*)

56.     Plaintiff State of New Mexico realleges and incorporates by reference paragraphs 1 through 55 above, as though fully set forth herein.

57.     This Court is authorized to grant the relief requested herein under the Declaratory Judgment Act 28 U.S.C. §§ 2201 (declarative relief), the APA 5 U.S.C. §§ 701–706 and because the actions of Mr. Cortez are *ultra vires* actions.

58.     The Rio Grande Compact is an interstate compact and federal law enacted as Public Act No. 96 by the 76th Congress of the United States on May 31, 1939.

59.     Pursuant to Article XII of the Compact, the Rio Grande Compact Commission administers the provisions of the Compact.

60.     Pursuant to Article VI of the Compact, "all credits and debits of Colorado and New Mexico shall be computed for each calendar year"; and "such credits and debits shall be reduced annually to compensate for evaporation losses in the proportion that such credits or debits bore to the total amount of water in such reservoirs during the year."

61.     Pursuant to Article VII of the Compact, New Mexico "may relinquish accrued credits at any time, and Texas may accept such relinquished water, and in such event the state, or states, so relinquishing shall be entitled to store water in the amount of the water so relinquished."

62.     Mr. Cortez's action to reduce and release New Mexico's Credit Water in 2011 was not

        authorized by New Mexico or the Commission under the Rio Grande Compact and

        therefore was *ultra vires*.

63.     Plaintiff requests that the Court declare that unless specifically authorized by New

        Mexico and the Rio Grande Compact Commission:

        a.      Mr. Cortez is not authorized to release New Mexico's Compact Credit Water

                stored in Elephant Butte Reservoir to Caballo Reservoir or to any other

                Reclamation facility, and

        b.      Mr. Cortez is not authorized to reduce New Mexico's Compact Credit Water

                during the calendar year for any purpose, including evaporative loss.

64.     Plaintiff further requests that Mr. Cortez be enjoined from any future reductions or

        releases of New Mexico's Credit Water unless such actions are specifically authorized by

        New Mexico and the Rio Grande Compact Commission.

**THIRD CLAIM FOR RELIEF: DECLARATORY AND INJUNCTIVE RELIEF FOR
VIOLATION OF THE WATER SUPPLY ACT**
(the operating agreement is a major operational change undertaken without required
Congressional approval)

65.     Plaintiff State of New Mexico realleges and incorporates by reference paragraphs 1

        through 64 above, as though fully set forth herein.

66.     The Defendants have an obligation to operate the Rio Grande Project in accordance with,

        *inter alia*, the Reclamation Act of June 17, 1902, ch. 1093, 32 Stat. 388 as amended and

        supplemented ("Reclamation Act"),43 U.S.C. §§ 371 *et seq*. including those portions of

24

the Reclamation Act called the Water Supply Act of 1958, 43 U.S.C. §390b, and Rio

Grande Project Act, ch. 798, 33 Stat. 814, Act of February 25, 1905 ("Project Act"), and

section 8 of the Reclamation Act, 43 U.S.C. § 383.

67.   Defendants have breached their duty to operate the Rio Grande Project in accordance

with the Water Supply Act, 43 U.S.C. §390b(d) because the 2008 Operating Agreement

constitutes a major operational change that requires Congressional approval.  New

Mexico and its citizens have and will continue to suffer harm because of Defendants

breach of this duty to operate the project in accordance with Congressional intent that

Project water be distributed to the authorized acres in the project in equal amounts per

acre, and in accordance with Reclamation's long time contracts and policy, to wit, 88/155

to EBID in New Mexico, and 67/155 to EPCWID in Texas.  So long as the 2008

Operating Agreement is allowed to continue to govern Project operations, New Mexico's

rightful share of Project water is being denied because of Defendants wrongful and illegal

actions.

68.   In the Water Supply Act, Congress has clearly limited Defendants discretion to make

major operational changes in the Project, and Defendant's failure to seek Congressional

approval prior to implementing the 2008 Operating Agreement is, therefore, also a

violation of law.  Defendants have usurped the power of the legislative branch by

illegally and without prior congressional approval making major operational changes in

the Project by allowing long-term carry over storage in violation of the authorized

purposes of the Rio Grande Project, Reclamation law, and New Mexico state water law.

69.     The State of New Mexico as an aggrieved entity is entitled to judicial review of the BOR

        action implementing the 2008 Operating Agreement.

70.     The State of New Mexico is now being harmed and will continue to suffer significant

        harms from Defendants' action in implementing the 2008 Operating Agreement.

**FOURTH CLAIM FOR RELIEF: DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF ADMINISTRATIVE PROCEDURES ACT**

71.     Plaintiff State of New Mexico realleges and incorporates by reference paragraphs 1

        through 70 above, as though fully set forth herein.

72.     The APA provides that persons adversely affected by agency action are entitled to

        judicial review of such action. 5 U.S.C. § 702.  A state is a person for purposes of the

        APA.

73.     The APA has waived the Defendant agencies sovereign immunity for all claims arising

        herein. 5 U.S.C. § 702.

74.     The Defendant's actions in implementing the 2007 Operating Procedures and the 2008

        Operating Agreement are final agency actions that implement specific decisions and from

        which flow significant consequences.  The Defendants actions were unlawful, "arbitrary,

        capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

        706(2) (A).  The Defendants entirely failed to conduct any hydrologic review of the

        possible effect of the so called "accounting changes" in the 2008 Operating Agreement,

        and through the subterfuge of "accounting" legitimized a wholesale, radical, and illegal

        redistribution of Project water to New Mexico's detriment.  The Defendants utterly failed

to examine the relevant data and articulate a satisfactory explanation for their action, and failed to make the required connection between the facts found and the choice made.

75. State of New Mexico is now being harmed and will continue to suffer significant harm from Defendants' action in executing and implementing the 2008 Operating Agreement.

## FIFTH CLAIM FOR RELIEF: DECLARATORY AND INJUNCTIVE RELIEF FOR NEPA VIOLATION

76. Plaintiff State of New Mexico realleges and incorporates by reference paragraphs 1 through 75 above, as though fully set forth herein.

77. Defendants have violated the NEPA, 42 U.S.C. §§ 4331 *et seq.*, which requires agencies to take a "hard look" at the consequences of any and all major Federal actions significantly affecting the quality of the human environment prior to making the decision in issue, and obligates the Defendants to prepare an Environmental Impact Statement, and/or an Environmental Assessment of the proposed action that includes responsible scientific and hydrologic evidence of the consequences possible from the major changes they implemented with the implementation of the 2008 Operating Agreement.

78. The Defendants violated NEPA, by unilaterally adopting the 2007 Operating Procedures allowing for long-term storage without honest NEPA compliance, and again in 2008 by entering into the OA, which is another major federal action significantly affecting the quality of the human environment without adequate analyses of its consequences. Contrary to the NEPA command of performing a "hard look" at any major federal action significantly affecting the quality of the human environment, 42 U.S.C. § 4332(2)(C), the

Defendants badly misdescribed in 2007 what they did that year, and then issued no

further NEPA documents at all in 2008.  The NEPA documents issued in 2007 whitewash

the major operational change implemented in the Procedures by falsely claiming there

would be no actual change in water uses, an assertion that has been shown to be wholly

false by events.  In fact, the long-term storage accounting changes combined with the

changes in the diversion ratio effect a major change from how the project had always

been operated.  For the 2007 Operating Procedures, the Defendants prepared only

minimal description and no analysis of the environmental consequences of its unilateral

decision to impose radically different operating procedures for five years.

79.    The FONSI describes an accounting procedure which modified allocations for five years,

but the ultimate agreement significantly changed operations for fifty years.

Implementing allocation through carry over storage accounts is an accounting procedure

with real consequences, and which the BOR itself had alleged in 2007 was a fundamental

change in historic operations.

80.    The NEPA documents were issued to justify the initial unilaterally made changes, but

were never redone when the fifty year agreement was signed almost a year later.  The

NEPA documents do not, in fact, describe the ultimate action taken, and so even if they

were adequate to describe the 2007 Operating Procedures, they fail utterly to describe the

ultimately adopted fifty year agreement that acts as a major operational change in

reservoir operations.

81.    That the agreement was reached in compromise of litigation does not insulate it from NEPA.

82.    NEPA, 42 U.S.C. §§ 4331 *et seq*., is the fundamental federal law to ensure that federal agencies make informed decisions and to provide for public participation in environmental analyses and decision-making.  The Council on Environmental Quality ("CEQ") has promulgated regulations implementing NEPA that are binding on all federal agencies. 40 C.F.R. §§ 1500 *et seq*.

83.    Defendants breached their obligation under NEPA requiring, among other things, that environmental information be made available to public officials and citizens before decisions are made and before action is taken. 40 C.F.R. § 1500.1(b).  Defendants breached their duties to provide accurate information to the public, New Mexico, and other interested agencies through their NEPA documents for numerous reasons, more fully to be described after discovery, and including but not limited to that  the Defendants badly misdescribed their proposed action in 2007 and failed entirely to issue any amended NEPA documents in 2008.  Defendants engaged with no cooperating agencies and consulted no one other than the EBID and EPCWID and the United States Section of the International Boundary and Water Commission.  (See, attached FONSI.)

84.    Under NEPA, an agency must consider the scope and the significant issues to be analyzed under a proposal. See 40 C.F.R. § 1501.7(a) (2).  "Scope" consists of both cumulative actions ("which when viewed with other proposed actions have cumulatively significant impacts and should therefore be discussed in the same impact statement") and

29

connected actions ("which means that they are closely related and should therefore be

discussed in the same impact statement"). *Id*. at § 1508.25(a) (1) & (2). An agency must

consider "[w]hether the action is related to other actions with individually insignificant

but cumulatively significant impacts." *Id*. at § 1508.27(b) (7). Defendants performed

none of these mandatory duties.

85.     Defendants' failure or refusal to comply with NEPA is arbitrary, capricious, an abuse of

discretion, not in accordance with law and constitutes agency action unlawfully withheld

or unreasonably delayed in violation of the APA, 5 U.S.C. § 706(1) & (2), which has

caused or threatens serious prejudice and injury to Plaintiffs' rights and interests.

86.     New Mexico has been harmed and will continue to suffer harm directly caused by these

breaches of duty and arbitrary action of Defendants.

**SIXTH CLAIM FOR RELIEF: DECLARATORY AND INJUNCTIVE RELIEF FOR
VIOLATION OF SECTION 8, RECLAMATION ACT, 43 U.S.C. § 383**

87.     Plaintiff State of New Mexico realleges and incorporates by reference paragraphs 1

through 86 above, as though fully set forth herein.

88.     Defendant's actions in changing the purposes of use of Project water in Elephant Butte

Reservoir to include long term storage violate 43 U.S.C. § 372 providing that: "The right

to the use of water acquired under the provisions of this Act shall be appurtenant to the

land irrigated, and beneficial use shall be the basis, the measure, and the limit of the

right." Historic use, which defines the use, has never included long term storage and

storing water for an indefinite period rather than following the historic operating

procedures for Elephant Butte which allocated available water on an annual basis is not a

beneficial use.  Further, such unlimited storage invites evaporation or waste, and is not

allowed under New Mexico law requiring beneficial use.  See *Jicarilla Apache Tribe v.*

*U.S.*, 657 F.2d 1126, 1137, 1138 (10th Cir. 1981).  Thus, this departure not only violates

New Mexico law but also the Reclamation Act.

89.     Defendants actions complained of herein violate reclamation law, 43 U.S.C. § 383

(section 8 of the Reclamation Act) providing that

> Nothing in this Act shall be construed as affecting or intended to affect or
> to in any way interfere with the laws of any State or Territory relating to
> the control, appropriation, use, or distribution of water used in irrigation,
> or any vested right acquired thereunder and the Secretary of the Interior, in
> carrying out the provisions of this Act, shall proceed in conformity with
> such laws, and nothing herein shall in any way affect any right of any
> State or of the Federal Government or of any landowner, appropriator, or
> user of water in, to, or from any interstate stream or the waters thereof.

90.     The OA is effectively a change in use, not currently authorized as a water right purpose,

and for which the BOR must first seek state engineer approval under state water law,

made applicable to Reclamation projects under Section 8 of the Reclamation Act. 43

USC §§ 372, 383.  *Strawberry Water Users Ass'n v. U.S.*, 576 F.3d 1133, 1148 (10th Cir.

2009).  "The Reclamation Act restricts the use of water to beneficial uses in accordance

with state law.  Under the Act, the right to the use of reclamation water is appurtenant to

the irrigated land and vests with its beneficial users, 43 U.S.C. § 372 ("The right to the

use of water acquired under the provisions of this Act shall be appurtenant to the land

irrigated, and beneficial use shall be the basis, the measure, and the limit of the right.")

State law governs the adjudication and uses of those rights.

91.    Having initially, unilaterally, and subsequently through the 2008 Operating Agreement,

implemented the change, the Defendants have in effect violated both federal and state law

regarding beneficial use and historic use of the Project.  The carryover has the effect of

adding long term storage to the purposes of the Act, which is not currently a

congressionally authorized use.  Such change also can be implemented only with the

approval of the State Engineer.  N.M. Stat. §§ 72-5-23, 24 (1978).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff State of New Mexico respectfully requests that this Court enter

an order in favor of Plaintiff:

1.    Declaring that BOR is not authorized to release New Mexico's Compact Credit Water

stored in Elephant Butte Reservoir to Caballo Reservoir or to any other Reclamation

facility and enjoining BOR from such releases in the future; and

2.    Declaring that BOR is not authorized to reduce New Mexico's Compact Credit Water

during the calendar year for any purpose, including evaporative loss, unless specifically

authorized by New Mexico and the Rio Grande Compact Commission and enjoining

BOR from such reductions in the future; and

3.    Declaring that the actions of Mr. Cortez in his official capacity and the BOR in reducing

New Mexico's Compact Credit Water during the calendar year for any purpose, including

evaporative loss, and in releasing New Mexico's Compact Credit Water without

authorization by New Mexico are *ultra vires* and enjoining such actions in the future; and

4.      Finding that Defendants have violated the Water Supply Act, 43 U.S.C. § 390b, by
implementing a major operational change in the Project without prior Congressional
approval; and

5.      Declaring the 2008 Operating Agreement void as a matter of law and enjoining BOR
from implementing the 2008 Operating Agreement; and

6.      Finding that Defendants have violated Section 8 of the Reclamation Act, 43 USC § 383,
by changing the purpose of use in Elephant Butte Reservoir to include long-term storage
without seeking the approval of the New Mexico State Engineer; and

7.      Finding that Defendants have violated NEPA by failing to take a hard look at the
environmental consequences of the 2007 Operating Procedures and the 2008 Operating
Agreement; and

8.      Finding that Defendants actions in executing and implementing the 2008 Operating
Agreement are arbitrary, capricious, an abuse of discretion, and not in accordance with
law; and

9.      Ordering Defendants to cease their violations of law by terminating the 2008 Operating
Agreement and enjoining operations contrary to historic practices followed prior to 2006;
and

10.     Ordering that releases to the New Mexico and Texas irrigation districts of Project water
supplies shall be made in the proportion of 57% to New Mexico and 43% to Texas and an
equal amount of water to each acre of land under the Project; and

33

11.     Awarding Plaintiff State of New Mexico its reasonable costs, expenses, and attorneys fees associated with this litigation; and

12.     Granting such other relief as the Court deems just and proper.

Respectfully submitted this 8th day of August, 2011.


_____/s/ Sarah A. Bond_____
Gary K. King, New Mexico Attorney General
Stephen R. Farris
Sarah A. Bond
Assistant Attorneys General

Martha C. Franks
Special Assistant Attorney General
Abramowitz & Franks
Post Office Box 7580
Albuquerque, New Mexico  87194-7580

Peggy E. Montaño
Bennett W. Raley
Special Assistant Attorneys General
Trout, Raley, Montaño, Witwer & Freeman P.C.
1120 Lincoln Street, Suite 1600
Denver, Colorado  80203