**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**STATE OF NEW MEXICO,**

  **Plaintiff,**

**vs.**            **No. 11-CV- 691 JP/WDS**

**UNITED STATES OF AMERICA;
KENNETH L. SALAZAR, Secretary of the
Department of the Interior;
MICHAEL L. CONNOR, Commissioner of the
Bureau of Reclamation;
FILIBERTO CORTEZ, Manager of the
El Paso Field Division of the
Bureau of Reclamation in El Paso;
UNITED STATES BUREAU OF RECLAMATION;
and the
UNITED STATES DEPARTMENT OF THE INTERIOR,
THE ELEPHANT BUTTE IRRIGATION DISTRICT, and
THE EL PASO COUNTY WATER IMPROVEMENT DISTRICT
NO. 1,**

  **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING WITHOUT PREJUDICE
MOTION TO INTERVENE OF THE
MIDDLE RIO GRANDE CONSERVANCY DISTRICT**

  The Middle Rio Grande Conservancy District (MRGCD) has moved to intervene as a

plaintiff in this case on the ground that its interest is impaired by Defendants' actions that are

the subject of this lawsuit.[1]  Because the MRGCD's interest in the subject of this lawsuit is

indirect and because the State currently adequately represents MRGCD's interest, the Court will

deny the Motion without prejudice.

BACKGROUND

A.       Historical Background – The Reclamation Act of 1902

In the Reclamation Act of 1902 (43 U.S.C. § 372), Congress created the United States

Reclamation Service (USRS), the predecessor of the United States Bureau of Reclamation

(BOR).  The USRS developed water storage and distribution projects throughout the Western

United States.  In 1906, the USRS developed the Rio Grande Project (Project), which consists of

water management structures along the Rio Grande including two dams and storage reservoirs in

southern New Mexico: Elephant Butte Reservoir and the nearby downstream Caballo Reservoir.

From these storage facilities, the Project supplies water to about 155,000 irrigable acres of land

in both New Mexico and Texas.  Approximately 88,000 acres are located within the Elephant

Butte Irrigation District (EBID) in New Mexico, and approximately 67,000 acres are located in

---

[1] MOTION TO INTERVENE OF THE MIDDLE RIO GRANDE CONSERVANCY
DISTRICT AND MEMORANDUM IN SUPPORT (Doc. No. 19) (Motion).  In addition,
MRGCD also filed a [PROPOSED] COMPLAINT IN INTERVENTION BY THE MIDDLE
RIO GRANDE CONSERVANCY DISTRICT FOR A DECLARATORY JUDGMENT (Doc.
No. 19-1) (Proposed Complaint). The State of New Mexico concurs with the Motion.  The
federal defendants oppose intervention and have filed FEDERAL DEFENDANTS' RESPONSE
IN OPPOSITION TO MRGCD's MOTION TO INTERVENE (Doc. No. 27).  On January 9,
2012, the MRGCD filed its REPLY IN SUPPORT OF MOTION TO INTERVENE OF THE
MIDDLE RIO GRANDE CONSERVANCY DISTRICT (Doc. No. 35).

Texas within the El Paso County Water Improvement District No. 1 (EPCWID).[2]  During and

after the development of the Project, it became evident that the states through which the Rio

Grande flowed needed to settle their differences regarding apportionment of the Rio Grande.

       B.      The Rio Grande Compact

In 1939, the Rio Grande Compact (Compact) was executed by Colorado, New Mexico

and Texas and then was ratified by Congress. *See* Public Act No. 96 by the 76th Congress of the

United States (May 31, 1939), 53 Stat. 785 (1939).[3]  The Compact establishes "an equitable

apportionment" of the waters of the Rio Grande above Fort Quitman, Texas.[4]  *Id.*  The Rio

Grande Compact Commission (Commission) administers the provisions of the Compact. *Id.* Art.

XII.

Under the Compact, each year New Mexico must allow a certain percentage of Rio

Grande water to flow past the Otowi Gauge just north of Santa Fe, New Mexico and arrive at a

downstream gauge located near Elephant Butte Reservoir.  If during a particular year New

Mexico delivers more water through the downstream gauge than required by the Compact, this

water is credited to New Mexico for that year.  This "Credit Water" is accrued from year to year,

---

    [2] Under a 1906 treaty, the United States must deliver 60,000 acre feet of Project water each year to the Republic of Mexico.  In 1996, Congress transferred the title to most of the distribution works, including the canals, drains, and laterals within the Rio Grande Project to EBID and EPCWID, but expressly retained "[t]itle to and responsibility for operation and maintenance of Elephant Butte and Caballo dams . . . and the works necessary for their protection and operation." 106 Stat. 4600 (1992).

    [3] The Compact is reprinted in NMSA 1978 § 72-15-23 (1939).

    [4] Fort Quitman, now a ghost town, is about 80 miles south of El Paso, Texas. In 1940, the residents of Fort Quitman numbered less than twenty-five, and by the mid-1950s the town was no longer shown on maps of the area. *See* The Handbook of Texas Online, http://www.tshaonline.org/handbook/online/articles/hvf34 (visited on January 10, 2012).

and it can be applied against the obligation to release water in years when New Mexico delivers less than the amount of water required by the Compact.[5]  Credit Water may also be offered to or "relinquished" to Texas.  If Texas accepts the relinquished Credit Water, New Mexico receives Relinquishment Storage Credits (RSCs) and may store water in reclamation structures built after 1929, one of which is El Vado Reservoir.  *See* Compact Art. VII (stating, "Colorado or New Mexico, or both, may relinquish accrued credits . . ., and Texas may accept such relinquished water, and in such event the state, or states, so relinquishing shall be entitled to store water in the amount of the water so relinquished.").

     C.     The 2008 Operating Agreement and Plaintiff's Complaint

The BOR operates the Elephant Butte and Caballo Reservoirs and delivers the yearly allocation of water from these reservoirs under the Compact.  In Plaintiff's FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (Doc. No. 44-1) (Amended Complaint), Plaintiff contends that until 2006, the BOR allocated available water called "Usable Water" on an annual basis according to the percentage of irrigable lands in each state: 57 % of the Usable Water was allocated to EBID and 43% of the Usable Water was allocated to

---

[5] Article I of the Compact defines "Credit Water" as, "that amount of water in project storage which is equal to the accrued credit of Colorado, or New Mexico, or both." *Id.* Art. I (m). The credits and debits allocated to Colorado and New Mexico are computed by the Commission each year in March at the Commission's annual meeting.  *Id.* Arts. II, III and VI.  "Usable Water" is defined as "all water, exclusive of credit water, which is in project storage and which is available for release in accordance with irrigation demands, including deliveries to Mexico. *Id.* Art. I (l).

EPCWID. (Am. Compl. ¶ 35.)[6]  Plaintiff alleges that in 2006 and 2007, the BOR "unilaterally

adopted Project operational changes[,]" which the BOR represented would be temporary,

"pending . . . negotiations among the Districts and the BOR." (*Id.* ¶ 38.)  According to Plaintiff,

the operational changes caused the amount of water allocated to New Mexico under the Compact

to be artificially reduced. (*Id.* ¶ 45.)   In 2007, the BOR issued an Environmental Assessment

(EA) and Finding of No Significant Impact (FONSI), which purportedly satisfied the

requirements of the National Environmental Policy Act, 42 U.S.C. § 4331 et seq. (NEPA).  (*Id.* ¶

39, Ex. B.)  Plaintiff alleges that the BOR falsely stated in the EA and FONSI that "[t]here is no

uncertainty or unknown risk" from the changes because the operational changes merely

formalized how the BOR had operated the Rio Grande Project over time.  (*Id.*)  Some of these

operational changes were incorporated into an Operating Agreement executed in March 2008 by

the BOR, EBID and EPCWID.

The March 2008 Operating Agreement (2008 Agreement) was executed by the United

States, EBID and EPCWID as a settlement of claims asserted by EBID (plaintiff) and the City of

---

[6] The Court granted leave for Plaintiff to file its Amended Complaint in which Plaintiff also added EBID and EPCWID as defendants. *See* MEMORANDUM OPINION AND ORDER GRANTING MOTION TO JOIN EL PASO COUNTY WATER IMPROVEMENT DISTRICT NO. 1 (EPCWID) AND ELEPHANT BUTTE IRRIGATION DISTRICT (EBID) AS ADDITIONAL PARTIES (Doc. No. 39).

Las Cruces (intervenor plaintiff) against the BOR and EPCWID.[7]  In the Amended Complaint,

Plaintiff asks the Court to declare the 2008 Agreement void and asks for a declaratory judgment

that the Bureau of Reclamation (BOR) and the other Federal Defendants have no authority to

release or reduce the State's allocation of water from the Elephant Butte and Caballo Reservoirs

for any purpose.  Plaintiff alleges that the 2008 Agreement allows long-term, carryover storage

---

[7] EBID sued the BOR and EPCWID in Case No. 00 CV 1309 BB/KBM alleging that the BOR had breached several water supply contracts and an informal agreement allocating Project water under which the parties had been operating for several years.  EBID further alleged that the BOR breached contracts with EBID by entering into a contract with EPCWID under which some of EPCWID's Project water would be converted from irrigation to municipal use by the City of El Paso.  Notably, EBID also alleged that it planned to enter into its own conversion contracts with the City of Las Cruces but that the BOR has no legal interest in its conversion contracts and was not entitled to approve of conversion contracts under the Warren Act, 43 U.S.C. § 521.  EBID also claimed that it was contractually entitled to a joint operating agreement governing its relationship with the BOR to replace the informal agreement, and EBID asked the Court to declare the terms of that operating agreement.  Finally, EBID asked the Court to appoint a Special Master to govern its relationship with the BOR and EPCWID and to implement the terms of the requested operating agreement.  In an amended complaint filed in 2004, EBID added an allegation that the BOR had misallocated Project water in 2003 causing shortages of water for EBID's irrigators.

On July 2, 2003, the City of Las Cruces was allowed to intervene as a plaintiff in Case No. 00 CV 1309 (*See Memorandum Opinion and Order* Doc. No. 51).  In the Memorandum Opinion and Order (Doc. No. 51) allowing intervention, the Court also affirmed its previous decision to dismiss with prejudice EBID's request for a special master, EBID's breach of contract claim concerning the EPCWID/El Paso conversion contract, and EBID's request that the Court declare the terms of a joint operating agreement to govern the relationship among EBID, EPCWID and the BOR.  However, the Court reconsidered and revived EBID's claim that it was entitled to enter into conversion contracts with the City of Las Cruces under which the City could convert irrigation water to water for municipal and industrial use.  Thus, EBID's and the City's claim that they were not required to get the BOR's permission under the Warren Act, 43 U.S.C. § 521 to enter into a conversion contract was the only remaining claim in Case No. 00 CV 1309.  It appears that this claim has not been litigated.  The 2008 Agreement settling the litigation is dated March 10, 2008, but it does not address the conversion issue.  After the 2008 Agreement was executed, in April 2008 the Court entered an Order (Doc. No. 51) granting EBID's motion to voluntarily dismiss its claims without prejudice. In the April 2008 Order, the court stated, "Intervenor City of Las Cruces' Complaint In Intervention against the United States is preserved and said entities shall remain as parties to this action."  (Doc. No. 51 at 2.) No docket entries appear in Case No. 00 CV 1309 after April 2008.

of water and allows the stored water to be accounted for apart from the calculation of water available for allocation in a given year.  (Am. Compl. ¶¶ 37, 40.)  Plaintiff alleges that "[t]he new and drastically different procedures have caused substantial harm to New Mexico and its citizens.  Water that would have been allocated to the two districts on an annual basis under historic practice is instead accounted to the districts' carryover water account." (*Id.* ¶ 45.) Plaintiff maintains that "[p]lacing water in long-term storage withholds water from the next year's allocation." (*Id.*) "In the past three years, BOR has failed to allocate water in storage on an annual basis to both districts."  (*Id.*)  Plaintiff contends that as a result, the actual amount of water allocated between New Mexico and Texas is "artificially reduced prior to the percentage distribution." (*Id.*)  In sum, Plaintiff contends that the accounting of water under the 2008 Agreement has led to the inequitable allocation of water that violates the Compact and other federal statutes.  Plaintiff maintains that New Mexico's allocations of water under the 2008 Agreement have been more than 150,000 acre-feet per year less than the allocations would have been under the historical operation of the Project.  (*Id.*)

Specifically, Plaintiff contends that at the Commission's annual meeting in March 2011, the total amount of Credit Water in Elephant Butte Reservoir was calculated at 166,300 acre-feet.  (Am. Compl. ¶ 30.)  Out of the Credit Water, New Mexico was supposed receive a credit of 164,700 acre-feet of water, and Colorado was to receive a credit of 1,600 acre-feet of water. (*Id.*)  Plaintiff alleges that in June 2011, acting under the 2008 Operating Agreement, the BOR's Filiberto Cortez, acting *ultra vires*, reduced New Mexico's accrued Credit Water from 164,700

7

acre-feet to only 100,000 acre-feet without Plaintiff's or the Commissions's approval.[8]  (*Id.* ¶ 31.)  Plaintiff alleges that this reduction of Credit Water "act[ed] like an accepted 'relinquishment' to Texas of Credit Water under the Rio Grande Compact but without New Mexico's consent or ability to negotiate terms and conditions with Texas[]" presumably without the receipt of the RSCs allowed under the Compact.  (*Id.* ¶ 32.)

Plaintiff claims that the 2008 Agreement also violates state law.  First, the BOR failed to obtain a permit from the New Mexico State Engineer for the change from the historical use of the Elephant Butte Reservoir, including the allowance of the long-term storage of Project water.  Second, under New Mexico law, "beneficial use shall be the basis, the measure and the limit of the right to the use of water." N.M. Const. art. XVI, § 3.  Plaintiff asserts that long-term storage allows for water to remain indefinitely unused and risks evaporation of usable water.  Hence, the Agreement violates New Mexico water law as well as Section 8 of the Reclamation Act, which affirms Congress' policy of deference to state water laws.[9]

---

[8] Plaintiff contends that over the last three years, EBID has incurred a decrease in annual water allocations under the 2008 Agreement in the range of 149,160 to 189,110 acre-feet, which equals 30.1% to 38.2% less than its historical allocation. (Am. Compl. ¶ 48b.) According to Plaintiff, EPCWID received 140,590 to 176,170 acre-feet more water during the same time period, which is 37.3% to 46.7% more than its historical allocation. (*Id.* ¶ 48c.)

[9] Section 8 of the Reclamation Act provides,

Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof.

43 U.S.C. § 383.

Finally, Plaintiff contends that the 2008 Agreement negatively affects the operation of the Project and undermines the purpose of the Compact to such an extent that it effectively amends the Compact without Congressional approval.  Plaintiff asks for a declaratory judgment that the BOR undertook a major federal action by executing the 2008 Agreement in violation of multiple federal laws: 1) the Compact; 2) the Administrative Procedures Act, 5 U.S.C. §§ 701-706 (APA); 3) NEPA; 4) the Water Supply Act, 43 U.S.C. § 390b(d) (WSA); and 5) the Reclamation Act, 43 U.S.C. § 383.

D.      The MRGCD's Motion to Intervene

The MRGCD is a political subdivision of the State of New Mexico formed in 1925 under the New Mexico Conservancy Act, NMSA 1978, § 73-14-1 et seq.  El Vado Reservoir is the source of water distributed by the MRGCD to irrigators in the Middle Rio Grande Valley.  The MRGCD contends that it should be allowed to intervene "to protect its ability to store water in El Vado Reservoir in the manner expressly authorized by the Rio Grande Compact." (Mot. 2.)  In addition, the MRGCD argues that intervention would serve principles of judicial efficiency because "the MRGCD would be forced to file its own action raising claims identical to the State's claims in this action and move to consolidate the two cases–a result not appropriate given the limited judicial resources available." [10] (Mot. 16.)  The MRGCD claims that its right to store water could have been affected or eliminated by the BOR's actions in June 2011, and as a result it must be allowed to intervene as a plaintiff under the mandatory intervention provision of Fed. R. Civ. P. 24(a).  Alternatively, the MRGCD asks the Court to allow it to intervene as a plaintiff

---

[10] The Court notes however that if the MRGCD files its own lawsuit, it must have standing to sue. *See generally, Tarrant Regional Water Dist. v. Herrmann*, 656 F.3d 1222, 1240 (10th Cir. 2011) (discussing Article III standing of water district to challenge interstate compact).

under the permissive intervention provision of Fed. R. Civ. P. 24(b).

The BOR opposes intervention claiming that its actions under the 2008 Agreement have had no appreciable effect on the actual allocations from the Elephant Butte Reservoir.  In addition, the BOR argues that the MRGCD's interest is sufficiently protected by Plaintiff, whose interests coincide with the MRGCD's interest.  The BOR further asserts that the MRGCD's users are not directly affected by allocations downstream from Elephant Butte Reservoir and that the Court should not allow the MRGCD to unnecessarily expand this litigation beyond the boundaries of the Project in Southern New Mexico and Western Texas.  Finally, the BOR argues that the MRGCD's attempted  intervention is too early because the Commission will conduct a final accounting of Compact water in Elephant Butte Reservoir in March 2012, and the accounting may show that there is no basis for the claim that Credit Water has been illegally released or reduced.  In sum, the BOR contends that at this early stage of the litigation, the MRGCD has no right to intervene under Rule 24(a), and that the MRGCD should not be allowed to intervene under the permissive intervention provision of Rule 24(b).

E.      MRGCD's Proposed Complaint.

In MRGCD's [PROPOSED] COMPLAINT IN INTERVENTION BY THE MIDDLE RIO GRANDE CONSERVANCY DISTRICT FOR A DECLARATORY JUDGMENT (Doc. No. 19-1) (Proposed Complaint), the MRGCD seeks a declaratory judgment that in June 2011, the BOR and the other Federal Defendants violated federal law by releasing New Mexico Credit Water.  (*Id.* ¶ 40.)  The MRGCD asks the Court to declare that New Mexico Credit Water can only be released or converted, " . . . when the State of New Mexico, acting through the proper channels within the Rio Grande Compact Commission, relinquishes such credits and the State of Texas, acting through proper channels, accepts such a relinquishment under Article VII of the

10

Rio Grande Compact."  (*Id.* ¶ 45.)

The MRGCD asserts that it has an interest in New Mexico's Credit Water because under the Compact, Credit Water can be used to mitigate future under-deliveries by New Mexico or it can be converted into RSCs.  If Credit Water is converted into RSCs, the MRGCD may "store water in El Vado Reservoir when the Rio Grande Compact would otherwise preclude the MRGCD from storing that water for its irrigators." (Mot. 4.)  The MRGCD maintains that the accounting of Credit Water is crucial to its users located upstream from Elephant Butte and Caballo Reservoirs because Credit Water converted to RSCs enables the MRGCD to protect its users during drought conditions.

## DISCUSSION

Rule 24 governs mandatory and permissive intervention:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or

> (2) claims an *interest relating to the property or transaction that is the subject of the action*, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, *unless existing parties adequately represent that interest*.

(b) Permissive Intervention.

> (1) In General. On timely motion, the court may permit anyone to intervene who:

>> (A) is given a conditional right to intervene by a federal statute; or

>> (B) *has a claim or defense that shares with the main action a common question of law or fact*.

(2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

    (A) a statute or executive order administered by the officer or agency; or

    (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) Delay or Prejudice. In exercising its discretion, *the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights*.

Fed. R. Civ. P. 24(a), (b) (emphasis added).

A.  Mandatory Intervention

To intervene as a matter of right, the MRGCD must demonstrate that it has a direct and substantial interest that may, as a practical matter, be impaired or impeded by the disposition of this litigation, and the MRGCD must also show that Plaintiff cannot adequately represent that interest. *City of Stilwell, Okla. v. Ozarks Rural Electric Cooperative Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Id.* (citing *San Juan County v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007)). Significantly, "[t]he interest of the intervenor is not measured by the particular issue before the court but is instead measured by whether the interest the intervenor claims is related to the property that is the subject of the action." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001) (citation omitted).

The *City of Stilwell* case illustrates the analysis here. The City of Stilwell, Oklahoma sued to condemn the electric facilities owned by Ozarks Rural Electric Cooperative Corporation (Ozarks) located on property annexed by the City.  KAMO Electric Cooperative (KAMO), a

rural electricity cooperative partially owned by Ozarks, moved to intervene and oppose condemnation.  KAMO argued that the condemnation of Ozarks' facilities would increase electricity costs to KAMO's customers.  The Tenth Circuit Court of Appeals upheld a finding by the district court that the financial interest of KAMO and its customers was "too attenuated and [did] not satisfy the 'direct and substantial' requirement of Rule 24(a)(2)."  *Id.* at 1042.  "KAMO's interest is not in the distribution facilities themselves, nor is it in the revenues Ozarks will derive from its customers in Stilwell.  KAMO merely has a *contingent interest* in the subject of the lawsuit–KAMO, as Ozarks' supplier of electric power, will benefit financially if Ozarks is allowed to continue to service its customers in Stilwell."  *Id.* (emphasis added).

In addition, the Tenth Circuit Court of Appeals affirmed the district court's determination that KAMO failed to demonstrate its interest was inadequately represented by Ozarks. *Id.* "While KAMO's ultimate motivation in this suit may differ from that of Ozarks, its objective is identical – to prevent Stilwell's condemnation." *Id.* (citing *Bottoms v. Dresser Indus.*, 797 F.2d 869, 872 (10th Cir. 1986)).  Because KAMO's interest in the subject of the lawsuit was identical to that of Ozarks, the Tenth Circuit Court of Appeals agreed with the district court that KAMO failed to make "a concrete showing of circumstances . . . that make [the existing party's] representation inadequate[.]'" *Id.* at 1043 (citing *Bottoms*, 797 F.2d at 872).  With these standards in mind, the Court will examine whether the MRGCD has met its two-fold burden to demonstrate its interest in this litigation and that the Plaintiff would inadequately represent that interest.

        1.  MRGCD's interest relating to the property or transaction that is the subject of this litigation.

The MRGCD asserts that its right to store water in El Vado Reservoir has been impaired

or will be impaired by the BOR's June 2011 release of the State's Credit Water from Elephant Butte Reservoir.  The BOR counters that the MRGCD's right to store additional water in El Vado Reservoir is not directly affected by its alleged release of Credit Water.  The BOR correctly asserts that under the Compact, several contingencies must take place before the MRGCD may store additional water in El Vado.  When New Mexico experiences "Article VII Storage Conditions," the MRGCD is not allowed to store additional water in El Vado unless the State acquires RSCs.  However, to obtain RSCs, the State must first offer to relinquish Credit Water to Texas, and Texas must accept the Credit Water.  Only then is the Credit Water converted into RSCs.  The BOR contends that since these contingencies must take place before the MRGCD can store additional water in El Vado, the MRGCD's interest in this lawsuit is too attenuated to allow intervention under Rule 24(a).

The BOR contends that MRGCD has another problem showing that it is harmed by the release of Credit Water.  El Vado Reservoir is owned and operated by the United States, and the MRGCD has no independent right to store water in El Vado.  In the 1960s in exchange for the assumption of the MRGCD's debt, the MRGCD transferred its water storage right, known as Storage Permit No. 1690, to the United States.  The BOR asserts that since the transfer, the United States alone has the right to store water in El Vado, and the United States delivers water to the MRGCD under a separate contract.  In other words, the MRGCD only has the right to

receive and distribute the released irrigation water under contract with the BOR.[11]  According to

the BOR, the Warren Act of 1911 (43 U.S.C. § 523) is the only general authorization for the

MRGCD to obtain the right to store water in a BOR facility.  Because the MRGCD has no

"Warren Act" contract with the BOR, the BOR argues the MRGCD has no actual right to store

water in El Vado.  In addition, the MRGCD needs a state issued permit to store water and that

permit (No. 1690) has been transferred to the BOR.  *See* NMSA 1978 § 72-5-1.

Next, the BOR argues that even if the MRGCD had permission to store water in El Vado,

the MRGCD's contention that the release or reduction of Credit Water affects its right to store

water makes no logical sense.  Both Plaintiff and the MRGCD allege that in June 2011 Credit

Water was illegally released from Elephant Butte Reservoir without the State's or the

Commission's permission.  However, under Article VII of the Compact, the MRGCD's right to

store water in El Vado is affected only when there is less than 400,000 acre feet of *usable* water

in Elephant Butte Reservoir.  The BOR asserts that in order for the MRGCD to show a direct

injury, it "should be arguing that it was usable water, not credit water that the BOR released

from the Project storage because only in that instance would there be a decrease in usable water

that might prohibit upstream storage." (Resp. 7.)  Since neither the Plaintiff nor the MRGCD

contends that *usable* water was improperly released from Elephant Butte Reservoir, the BOR

argues that there is a disconnect between the release of Credit Water and the prohibition on the

---

[11] The BOR points to Section 9(d) of the Reclamation Project Act of 1939, 43 U.S.C. § 485h(d), which provides that a water users organization may obtain irrigation water from Reclamation facilities by executing a contract which requires, *inter alia*, that the organization repay certain specified costs. Once these costs are repaid, the management and operation of works on irrigated lands may pass to the owners of lands irrigated. 43 U.S.C. § 498.  However, "title to and the management and operation of the reservoirs and the works necessary for their protection and operation shall remain in the [United States] Government until otherwise provided by Congress."  *Id.*

right to store water in El Vado, which is tied to usable water.  While the BOR correctly describes the conditions under which Article VII of the Compact limits the right to store water in El Vado, this argument fails to take into account the State's right to relinquish water, obtain RSCs, and store water even under Article VII conditions.  The MRGCD's interest lies in the State's right to relinquish Credit Water to obtain RSCs, and the use of the RSCs to allow the storage of additional water in El Vado.  Thus, the MRGCD's interest in storing additional water in El Vado has a logical, yet indirect, connection to the amount of  Credit Water allocated to the State.

However, the Court agrees with the BOR's contention that the MRGCD's interest in storing water in El Vado has at most an indirect connection with the subject of this lawsuit.  As such, MRGCD's interest in this litigation does not satisfy the requirement of Rule 24(a) that the MRGCD have a direct and substantial interest in the subject of this action.  The relationship between Credit Water and the MRGCD's right to store water in El Vado Reservoir is too attenuated to require intervention in this lawsuit because MRGCD's right to store water requires at least two events over which the MRGCD has no control: 1) the State must offer to relinquish Credit Water to Texas; and 2) Texas must accept the relinquished Credit Water.  These contingencies show that the MRGCD lacks the direct and substantial interest in the subject of this case to warrant mandatory intervention.  However, even if the MRGCD had established a direct and substantial interest in the subject of this lawsuit, intervention would not be mandated because the MRGCD has not demonstrated that its interest is inadequately represented by Plaintiff.

2.   Adequate representation of the MRGCD.

Even if an applicant satisfies the requirements of Rule 24(a)(2), it is not entitled to intervene if its "interest is adequately represented by existing parties."  Fed. R. Civ. P. 24(a)(2);

*San Juan County*, 503 F.3d at 1203.  When the "objective of the applicant for intervention is identical to that of one of the parties," a court may presume that the applicant is adequately represented.  *Id.* at 1204.  Plaintiff's primary objective in this lawsuit is to obtain a declaratory judgment that the BOR's, EBID's and EPCWID's actions in 2006, in 2007 and under the 2008 Agreement violate federal and state law and that the 2008 Agreement is invalid.  Even though the MRGCD admittedly "takes no position" on Plaintiff's claim that the 2008 Agreement violates federal and state law or that the 2008 Agreement is void, MRGCD's objective is essentially the same.  The MRGCD claims that the BOR's reduction of New Mexico's Credit Water in June 2011 violated federal law and the Compact when the BOR "purported to exercise complete dominion and control over the release of New Mexico Credit Water. . ."  (Prop. Compl. ¶ 40.)  The MRGCD asks for a declaratory judgment "that New Mexico Credit Water can only be released . . . when the State of New Mexico, acting through the proper channels within the Rio Grande Compact Commission, relinquishes such credits and the State of Texas, acting through the proper channels, accepts such a relinquishment under Article VII of the Rio Grande Compact."  (*Id.* ¶ 45.)

Although Plaintiff contends that the improper accounting of Credit Water began in 2006 and has continued under the 2008 Agreement, Plaintiff seeks the same relief as the MRGCD. Plaintiff asks the Court to declare that the BOR "is not authorized to release New Mexico's Compact Credit Water stored in the Elephant Butte Reservoir . . . ."  (Am. Compl. ¶ 56a.) Plaintiff further asks that the BOR "be enjoined from any further reductions or releases of New Mexico's Credit Water unless such actions are specifically authorized by New Mexico and the Rio Grande Compact Commission."  (*Id.* ¶ 57.)  Both the Plaintiff and the MRGCD ask the Court to correct the BOR's accounting of Credit Water and bring that accounting in line with the

17

Compact. *See City of Stilwell*, 79 F.3d at 1042 (finding that intervenor's objective was identical to plaintiff's and denying mandatory intervention). In addition, the MRGCD, as a political subdivision of Plaintiff, presumably has the same interest in protecting New Mexico's right to correct water allocations under the Compact. To show that it would be inadequately represented by Plaintiff, the MRGCD would have to show that its and Plaintiff's interests diverge, but the MRGCD has failed in that regard. *Cf. Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001) (noting that intervention by private parties is allowed even though their interest coincides with a governmental agency because the government's "obligation is to represent not only the interest of the intervenor but the public interest generally" and these obligations may not be coextensive with the intervenor's particular interest). Plaintiff claims that the BOR's release of Credit Water constituted an "accepted relinquishment to Texas of Credit Water . . . but without New Mexico's consent or ability to negotiate terms and conditions with Texas." The MRGCD echoes Plaintiff's position by asserting that the "terms" Plaintiff would have negotiated but for the illegal actions of the BOR "would have been to allow storage of water in El Vado Reservoir for the benefit of MRGCD." (Mot. 5.) Finally, the MRGCD asks the Court to interpret Plaintiff's concurrence on its Motion as an acknowledgment that it will not adequately represent the MRGCD. However, Plaintiff's concurrence is not an admission that Plaintiff would inadequately represent the MRGCD's interest especially since the MRGCD's and Plaintiff's objectives are identical: to stop the BOR from releasing or reducing New Mexico's Credit Water. Consequently, the MRGCD has failed to demonstrate that its interest in the subject of this suit is inadequately represented by Plaintiff. Thus, the Court will deny MRGCD's request for mandatory intervention under Rule 24(a).

B.  Permissive Intervention

Clearly, the MRGCD has shown that it "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  However, permissive intervention under Rule 24(b) is ". . . a matter within the district court's discretion . . ."  *City of Stilwell,* 79 F.3d at 1043.  In *City of Stillwell*, the Tenth Circuit Court of Appeals affirmed the district court's denial of permissive intervention because the intervenor's interest was adequately represented by a party and because the intervention "would unduly delay and prejudice the adjudication of the rights of the parties as [intervenor] attempts to interject additional issues. . ." *Id.*  Moreover, under Rule 24(b), the court in its discretion may or may not permit intervention, "even if the Rule's requirements are otherwise satisfied." *Genesis Ins. Co. v. Crowley*, No. 05-CV-00335, 2005 WL 3989772, *5 (D. Colo. Aug. 31, 2005) (citing *City of Stillwell*).  Thus, even though the MRGCD meets the technical requirement of Rule 24(b), the Court can deny intervention.

The MRGCD's claims essentially duplicate those of the Plaintiff, and the MRGCD has failed to persuade the Court that Plaintiff will inadequately represent the MRGCD's interest.  *Id.* (denying permissive intervention because intervenor was making the same legal arguments as the defendants).  *See also General Ins. Co. of America v. Rhoades*, 196 F.R.D. 620 (D. N.M. 2000) (denying  permissive intervention where injured party's interest in insurance coverage dispute was adequately represented by the insured and where injured party's pleadings and litigation position duplicated the insured's).  The MRGCD argues that the Plaintiff is acting solely for the benefit of Lower Rio Grande irrigators and would not adequately represent the Middle Rio Grande irrigators in this lawsuit.  This argument is belied by the Plaintiff's assertion that it is acting in *parens patriae* on behalf of all citizens harmed by "the denial of New

Mexico's rightful allocation of surface water in the Rio Grande Project . . ." (Compl. ¶ 1.)  These assertions exhibit Plaintiff's concern for all water users in New Mexico, not just Lower Rio Grande irrigators.

The Court in its discretion will also deny the MRGCD permissive intervention because it is premature.  The MRGCD contends that in June 2011 the BOR improperly released New Mexico's Credit Water in violation of the Compact.  But the BOR denies this contention and asserts that the Credit Water evaporated from storage and that the BOR properly released Usable Water from storage.  (Resp. 11.)  The Rio Grande Compact engineering advisors calculate the propriety of each year's Compact deliveries in February of the following year.  In this case, the delivery numbers for Colorado and New Mexico as well as the Project water released in 2011 will be calculated this month, and those calculations will be reported to the Commission at its meeting in March 2012, and the Commission will determine whether to accept those calculations.  Hence, neither Plaintiff nor the MRGCD will know if the BOR improperly released the Credit Water to which New Mexico is entitled until the Commission's March 2012 meeting.

In sum, at this point the MRGCD has failed to persuade the Court that Plaintiff will not act on behalf of all New Mexico water users in pursuing relief in this case.  Nor has the MRGCD convinced the Court that its interest is distinct from Plaintiff's.  However, after the March 2012 Commission meeting, the MRGCD may be able to show that Credit Water was released improperly and that the MRGCD's ability to obtain RSCs and store water has been directly affected.  Plaintiff's response to the information produced at the March 2012 Commission meeting possibly will reveal a divergence of interests between Plaintiff and the MRGCD such that the MRGCD may then convincingly argue that Plaintiff would inadequately represent the

MRGCD's interest.  Therefore, the Court will deny without prejudice MRGCD's Motion subject to reconsideration at a later date.

IT IS ORDERED that the MOTION TO INTERVENE OF THE MIDDLE RIO GRANDE CONSERVANCY DISTRICT AND MEMORANDUM IN SUPPORT (Doc. No. 19) is denied without prejudice.

_____
SENIOR UNITED STATES DISTRICT COURT