IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO,

      Plaintiff,

vs.                                          No. 11-CV- 691 JP/WDS

UNITED STATES OF AMERICA;
KENNETH L. SALAZAR, Secretary of the
Department of the Interior;
MICHAEL L. CONNOR, Commissioner of the
Bureau of Reclamation;
FILIBERTO CORTEZ, Manager of the
El Paso Field Division of the
Bureau of Reclamation in El Paso;
UNITED STATES BUREAU OF RECLAMATION;
and the
UNITED STATES DEPARTMENT OF THE INTERIOR,
THE ELEPHANT BUTTE IRRIGATION DISTRICT, and
THE EL PASO COUNTY WATER IMPROVEMENT DISTRICT
NO. 1,

      Defendants.

MEMORANDUM OPINION AND ORDER
GRANTING THE CITY OF LAS CRUCES' MOTION TO INTERVENE

Plaintiff State of New Mexico (Plaintiff or State) asks for a declaratory judgment that the

United States Department of the Interior, Secretary Kenneth Salazar, and the Bureau of

Reclamation (BOR), acting through its  Manager of the El Paso Field Division Filiberto Cortez

(together United States), has no authority to release or reduce the State's credit water from the

Elephant Butte Reservoir.  The City of Las Cruces (City), a member of the Elephant Butte

Irrigation District (EBID), has moved to intervene as a plaintiff in this action.  EBID receives

and releases allocations of water from the Rio Grande Project (Project) stored in the Elephant

Butte and Caballo Reservoirs.

1

On January 24, 2011, the Court granted Plaintiff's MOTION TO JOIN EL PASO COUNTY WATER IMPROVEMENT DISTRICT NO. 1 (EPCWID) AND ELEPHANT BUTTE IRRIGATION DISTRICT (EBID) AS ADDITIONAL PARTIES (Doc. No. 39), and Plaintiff filed its FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (Doc. No. 44-1) on February 10, 2012 (Amended Complaint).  On January 3, 2011, the City filed THE CITY OF LAS CRUCES' MOTION TO INTERVENE (Doc. No. 31) (Motion) and submitted THE CITY OF LAS CRUCES' COMPLAINT IN INTERVENTION (Doc. No. 32) (Proposed Complaint).  Plaintiff does not oppose the Motion.  However, the United States opposes the Motion and has filed Federal Defendants' Response in Opposition to the City of Las Cruces' Motion to Intervene (Doc. No. 40).  On February 16, 2012, the City filed CITY OF LAS CRUCES' REPLY TO FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO THE CITY OF LAS CRUCES' MOTION TO INTERVENE (Doc. No. 48).  Because the City has shown that it has an interest in the subject of this lawsuit that is not adequately represented by Plaintiff, the Court will grant the Motion.

## BACKGROUND

A.      Historical Background – The Reclamation Act of 1902

In the Reclamation Act of 1902 (43 U.S.C. § 372), Congress created the United States Reclamation Service (USRS), the predecessor of the United States Bureau of Reclamation (BOR).  The USRS developed water storage and distribution projects throughout the Western United States.  In 1906, the USRS developed the Rio Grande Project (Project), which consists of water management structures along the Rio Grande including two dams and storage reservoirs in southern New Mexico: Elephant Butte Reservoir and the nearby downstream Caballo Reservoir. From these storage facilities, the Project supplies water to about 155,000 irrigable acres of land

2

in both New Mexico and Texas.  Approximately 88,000 acres are located within the Elephant

Butte Irrigation District (EBID) in New Mexico, and approximately 67,000 acres are located in

Texas within the El Paso County Water Improvement District No. 1 (EPCWID).[1]  During and

after the development of the Project, it became evident that the states through which the Rio

Grande flowed needed to settle their differences regarding apportionment of the Rio Grande.

      B.      The Rio Grande Compact

      In 1939, the Rio Grande Compact (Compact) was executed by Colorado, New Mexico

and Texas and then was ratified by Congress. *See* Public Act No. 96 by the 76th Congress of the

United States (May 31, 1939), 53 Stat. 785 (1939).[2]  The Compact establishes "an equitable

apportionment" of the waters of the Rio Grande above Fort Quitman, Texas.[3]  *Id.*  The Rio

Grande Compact Commission (Commission) administers the provisions of the Compact. *Id.* Art.

XII.  Under the Compact, each year New Mexico must allow a certain percentage of Rio Grande

water to flow past the Otowi Gauge just north of Santa Fe, New Mexico and arrive at a

downstream gauge located near Elephant Butte Reservoir.  If New Mexico delivers more water

through the downstream gauge than required by the Compact, this water is credited to New

Mexico for that year.  This "Credit Water" is accrued from year to year and can be applied

against the obligation to release water in years when New Mexico delivers less than the amount

---

[1] Under a 1906 treaty, the United States must deliver 60,000 acre feet of Project water
each year to the Republic of Mexico.

[2] The Compact is reprinted in NMSA 1978 § 72-15-23 (1939).

[3] Fort Quitman is about 80 miles south of El Paso, Texas.

of water required by the Compact.[4]  Credit Water may also be offered to or "relinquished" to

Texas.  If Texas accepts the relinquished Credit Water, New Mexico receives Relinquishment

Storage Credits (RSCs) and may store water in storage reservoirs built after 1929, one of which

is the upstream El Vado Reservoir.  *See* Compact Art. VII (stating, "Colorado or New Mexico,

or both, may relinquish accrued credits . . ., and Texas may accept such relinquished water, and

in such event the state, or states, so relinquishing shall be entitled to store water in the amount of

the water so relinquished.").

      C.       The Plaintiff's Amended Complaint

      The BOR operates the Elephant Butte and Caballo Reservoirs and delivers the allocation

of water from these reservoirs under the Compact.  Plaintiff contends that until 2006, the BOR

allocated available water called "Usable Water" on an annual basis according to the percentage

of irrigable lands in each state: 57 % of the Usable Water was allocated to EBID and 43% of the

Usable Water was allocated to EPCWID. (Am. Compl. ¶ 35.)  Plaintiff alleges that in 2006 and

2007, the BOR "unilaterally adopted Project operational changes[,]" which the BOR represented

would be temporary, "pending . . . negotiations among the Districts and the BOR."  (*Id.* ¶ 38.)

According to Plaintiff, the operational changes caused the amount of water allocated to New

Mexico under the Compact to be artificially reduced. (*Id.* ¶ 45.)  In 2007, the BOR issued an

Environmental Assessment (EA) and Finding of No Significant Impact (FONSI), which

---

     [4] Article I of the Compact defines "Credit Water" as, "that amount of water in project storage which is equal to the accrued credit of Colorado, or New Mexico, or both." *Id.* Art. I (m). The credits and debits allocated to Colorado and New Mexico are computed by the Commission each year in March at the Commission's annual meeting.  *Id.* Arts. II, III and VI.  "Usable Water" is defined as "all water, exclusive of credit water, which is in project storage and which is available for release in accordance with irrigation demands, including deliveries to Mexico. *Id.* Art. I (l).

purportedly satisfied the requirements of the National Environmental Policy Act, 42 U.S.C. § 4331 et seq. (NEPA).  (*Id.* ¶ 39, Ex. B.)  However, Plaintiff alleges that the BOR falsely stated in the EA and FONSI that "[t]here is no uncertainty or unknown risk" from the changes because the operational changes merely formalized how the BOR has operated the Rio Grande Project over time.  (*Id.*)  These operational changes were allegedly incorporated into an Operating Agreement executed in March 2008 by the BOR, EBID and EPCWID.  The March 2008 Operating Agreement (2008 Agreement) was executed as a settlement of claims asserted by EBID (plaintiff) and the City of Las Cruces (intervenor plaintiff) against the BOR and EPCWID. Because the City's claims in the prior lawsuit inform the basis for its claims in this case, the Court will discuss the case in detail in part D of this opinion.

Plaintiff alleges that "[t]he new and drastically different procedures have caused substantial harm to New Mexico and its citizens.  Water that would have been allocated to the two districts on an annual basis under historic practice is instead accounted to the districts' carryover water account." (*Id.* ¶ 45.)  Plaintiff maintains that "[p]lacing water in long-term storage withholds water from the next year's allocation." (*Id.*)  Plaintiff contends that as a result, the actual amount of water allocated between New Mexico and Texas is "artificially reduced prior to the percentage distribution." (*Id.*)  Plaintiff maintains that New Mexico's allocations of water under the 2008 Agreement have been more than 150,000 acre-feet per year less than the allocations would have been under the historical operation of the Project. (*Id.*)

Specifically, Plaintiff contends that at the Commission's annual meeting in March 2011, the total amount of Credit Water in Elephant Butte Reservoir was calculated at 166,300 acre-feet.  (Am. Compl. ¶ 30.)  Out of the Credit Water, New Mexico was supposed receive a credit of 164,700 acre-feet of water, and Colorado was to receive a credit of 1,600 acre-feet of water.

(*Id.*)  Plaintiff alleges that in June 2011, the BOR's Filiberto Cortez, acting *ultra vires*, reduced New Mexico's accrued Credit Water from 164,700 acre-feet to only 100,000 acre-feet without Plaintiff's or the Commissions's approval.[5]  (*Id.* ¶ 31.)  Plaintiff contends that this reduction of Credit Water had the effect of "an accepted 'relinquishment' to Texas of Credit Water under the Rio Grande Compact but without New Mexico's consent or ability to negotiate terms and conditions with Texas[]" and presumably without the receipt of the RSCs allowed under the Compact.  (*Id.* ¶ 32.)

Plaintiff claims that the BOR violated state law because the BOR failed to obtain a permit from the New Mexico State Engineer for the change the historical use of the Elephant Butte Reservoir, including the allowance of the long-term storage of Project water.  Second, under New Mexico law, "beneficial use shall be the basis, the measure and the limit of the right to the use of water." N.M. Const. art. XVI, § 3.  Plaintiff asserts that long-term storage allows for water to remain indefinitely unused and risks evaporation of usable water.

Finally, Plaintiff contends that the 2008 Agreement negatively affects the operation of the Project to such an extent that it effectively amends the Compact without Congressional approval.  Plaintiff asks the Court to declare the 2008 Agreement void and to declare that the BOR undertook a major federal action by executing the 2008 Agreement in violation of multiple federal laws: 1) the Compact; 2) the Administrative Procedures Act, 5 U.S.C. §§ 701-706 (APA); 3) NEPA; 4) the Water Supply Act, 43 U.S.C. § 390b(d) (WSA); and 5) the Reclamation

---

[5] Plaintiff contends that under the 2008 Agreement, EBID has received lower annual water allocations in the range of 149,160 to 189,110 acre-feet per year, which equals 30.1% to 38.2% less than its historical allocation. (Am. Compl. ¶ 48b.) According to Plaintiff, EPCWID received 140,590 to 176,170 acre-feet more water during the same time period, which is 37.3% to 46.7% more than its historical allocation. (*Id.* ¶ 48c.)

Act, 43 U.S.C. § 383.

    D. *Elephant Butte Irrigation District v. United States Bureau of Reclamation et al*, Case No. 00 CV 1309 BB/KBM

In 2000, EBID sued the BOR and EPCWID alleging that the BOR had breached several water supply contracts and an informal agreement governing the allocation of Project water. EBID further alleged that the BOR breached contracts with EBID when the BOR entered into a contract with EPCWID under which some of EPCWID's Project water would be converted from irrigation to municipal and industrial use by the City of El Paso.  Notably, EBID also alleged that it plans to enter into its own conversion contracts with the City of Las Cruces but that the BOR is not entitled to approve of conversion contracts under the Warren Act, 43 U.S.C. § 521.[6]  EBID also claimed that it was contractually entitled to a joint operating agreement governing its relationship with the BOR to replace the informal agreement, and EBID asked the Court to declare the terms of the operating agreement.  Finally, EBID asked the Court to appoint a Special Master to implement the terms of the operating agreement and to govern the relationship

---

[6] Section 521 provides,

The Secretary of the Interior in connection with the operations under the reclamation law is authorized to enter into contract to supply water from any project irrigation system for other purposes than irrigation, upon such conditions of delivery, use, and payment as he may deem proper: Provided, That the approval of such contract by the water-users' association or associations shall have first been obtained: Provided, That no such contract shall be entered into except upon a showing that there is no other practicable source of water supply for the purpose: Provided further, That no water shall be furnished for the uses aforesaid if the delivery of such water shall be detrimental to the water service for such irrigation project, nor to the rights of any prior appropriator: Provided further, That the moneys derived from such contracts shall be covered into the reclamation fund and be placed to the credit of the project from which such water is supplied.

43 U.S.C. § 521.  EBID claims that only New Mexico law applies to conversion of water once it is delivered to EBID by the BOR.

among EBID, EPCWID and the BOR.  In an amended complaint filed in 2004, EBID added an

allegation that the BOR had misallocated Project water in 2003 causing shortages of water for

EBID's irrigators.

On July 2, 2003, the court allowed the City of Las Cruces to intervene as a plaintiff in

Case No. 00 CV 1309 (*See Memorandum Opinion and Order* Doc. No. 51).  In the

Memorandum Opinion and Order allowing intervention, the Court also affirmed its previous

decision to dismiss with prejudice EBID's request for a Special Master, EBID's breach of

contract claim concerning the EPCWID/El Paso conversion contract, and EBID's request that

the Court declare the terms of a joint operating agreement among EBID, EPCWID and the BOR.

However, the Court reconsidered and revived EBID's claim that it was entitled to enter into

conversion contracts with the City of Las Cruces without the BOR's approval.  Thus, EBID's

and the City's claim that they were not required to get the BOR's permission under the Warren

Act to enter into a conversion contract was the only remaining claim in Case No. 00 CV 1309.  It

appears that this claim has not been litigated.  The 2008 Agreement dated March 10, 2008 does

not address the conversion issue.  After the 2008 Agreement was executed, the Court entered an

order granting EBID's motion to voluntarily dismiss its claims without prejudice.  In the April

2008 Order, the court stated, "Intervenor City of Las Cruces' Complaint In Intervention against

the United States is preserved and said entities shall remain as parties to this action."  (Doc. No.

51 at 2.)  No docket entries appear in Cast No. 00 CV 1309 after April 2008.

E.  The City's Proposed Complaint

In its Proposed Complaint, the City asserts that its municipal water supply is derived

from several permits issued by the New Mexico State Engineer's office, which allow the City to

divert groundwater from the aquifer underlying the Lower Rio Grande Underground Water

Basin (Aquifer).  The City also asserts that it is a member of the EBID with "water righted lands" entitled to yearly allocations of Rio Grande Project surface water.  The City avers that its forty-year water development plan approved by the State Engineer's Office requires the City to actively manage its water resources including groundwater and surface water rights, to implement conservation initiatives, and to develop a reclamation facility to accommodate future growth in its population.  The City has established the Las Cruces Special Water Users Association under NMSA 1978 § 73-10-48 (2000) to lease the right to agriculture surface water, which the City intends treat and convert to municipal uses.  This conversion is referred to as an "Ag to MI conversion."  Under NMSA § 73-10-48, a municipality that establishes a Special Water Users Association may lease the water from landowners in an irrigation district if "(1) the municipality . . . supplies or proposes to supply water for municipal and industrial uses, at least a portion of which is supplied to persons within the boundaries of an irrigation district; and (2) the irrigation district and the state engineer approve of the establishment of the association."  NMSA 1978 § 73-10-48 (B) (2000).

In its Proposed Complaint, the City essentially mirrors Plaintiff's factual allegations. The City contends that the BOR's operational changes, which started in 2006 and 2007 and continued  under the 2008 Agreement have resulted in the "increased diversion of groundwater from the [A]quifer . . ., by irrigators within the EBID[.]" (Prop. Compl. ¶ 15.)  This has resulted in "uncertainty regarding the City's Ag/MI process to convert annual Project allocations of surface water to municipal and industrial uses in Las Cruces."  (Prop. Compl. ¶ 15.)   The City alleges that its plan to convert surface irrigation water into municipal water is based on historical levels of allocation and that its plan is now undermined.  Moreover, the increased diversion of groundwater by irrigators impairs the supply of water from the Aquifer and negatively affects its

sustainability.

In the sole count of the City's Proposed Complaint, the City contends that the process under which the 2008 Agreement was executed violates NEPA because the parties failed 1) to take a hard look at the consequences of this major federal action that significantly affects the human environment; 2) to provide for an Environmental Impact Statement (EIS) or an Environmental Assessment (EA) of the proposed action; 3) to initiate a public comment period for parties affected by the proposed federal action; and 4) to consider alternatives to the proposed federal action.[7]  In sum, the City contends that the parties to the 2008 Agreement failed to consider the effect on the human environment over the fifty-year term of the Agreement.

F.  The City's Motion To Intervene

In the Motion, the City argues that it has an interest in the subject of this action and that no other party can adequately represent its interest both in protecting its current groundwater rights and in converting Project water into municipal uses through its Ag/MI program.  Because the disposition of this action in the City's absence will as a practical matter impair its ability to protect its interest, the City contends that it must be allowed to intervene under the mandatory intervention provision of Rule 24(a).  Alternatively, the City contends that its claim and the claims in this lawsuit involve common issues of law or fact justifying permissive intervention under Rule 24(b).

_____

[7] The City argues that the 2007 NEPA process undertaken by the BOR did not analyze a "scope" of cumulative or connected actions arising from the 2006 and 2007 operational changes. In addition, the City asserts that the June 2007 Environmental Assessment (EA) and Finding of No Significant Impact (FONSI): 1) did not allow for a public comment period that included the City; 2) did not address the concerns of the City as to the sustainability of the Aquifer, and 3) did not address the affect on the City's Ag/MI program.

STANDARD OF REVIEW

Rule 24 provides for intervention of right and for permissive intervention:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) Permissive Intervention.

> (1) In General. On timely motion, the court may permit anyone to intervene who:

>> (A) is given a conditional right to intervene by a federal statute; or

>> (B) has a claim or defense that shares with the main action a common question of law or fact.

> (2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

>> (A) a statute or executive order administered by the officer or agency; or

>> (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

> (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

Fed. R. Civ. P. 24.

A movant must satisfy three criteria to qualify for intervention of right: (1) the movant

11

must have an interest in the subject matter of the litigation; (2) the movant's interest will be

impaired or impeded if movant is not allowed to intervene; and (3) the existing parties to the

litigation will not adequately represent the movant's interest. *See* Fed. R. Civ. P. 24(a)(2); *City of*

*Stilwell, Okla. v. Ozarks Rural Electric Cooperative Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996).

"If an absentee would be substantially affected in a practical sense by the determination made in

an action, he should, as a general rule, be entitled to intervene." *Id.* (citing *San Juan County v.*

*United States*, 503 F.3d 1163, 1199 (10th Cir. 2007)).  Significantly, "[t]he interest of the

intervenor is not measured by the particular issue before the court but is instead measured by

whether the interest the intervenor claims is related to the property that is the subject of the

action." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001) (citation

omitted).  "[T]he central concern in deciding whether intervention is proper is the practical effect

of the litigation on the applicant of intervention."  *San Juan County,* 503 F.3d at 1193.

However, even if an applicant satisfies the requirements of Rule 24(a)(2), it is not entitled to

intervene if its "interest is adequately represented by existing parties." *Id.* 1203.  A court may

presume that an intervenor is adequately represented when the "objective of the applicant for

intervention is identical to that of one of the parties."  *Id.* at 1204.  Under Fed. R. Civ. P. 24,

prospective intervenors bear the burden of showing that the existing party or parties may

represent their interests inadequately, but the burden is "minimal."  *Id.* at 1211 (citation omitted).

DISCUSSION

A.  Mandatory Intervention

1.  The City's Interest

The City argues that it has a right to intervene because it has two important interests

relating to the subject of this action, namely the proper allocation of New Mexico's Project

water.  First, the City has an interest in the proper allocation of Project water because the City plans to convert its allocation to municipal use in the future.  Second, because the improper allocation of Project water causes EBID's irrigators to use more water from the Aquifer, the City's primary source of water is threatened.  The BOR counters that the City's first asserted interest in Project water is too speculative because the City has no current right to convert Project water to municipal or industrial uses.  The BOR argues that under the Warren Act (43 U.S.C. § 521), conversion of Project water can be accomplished only through a conversion contract with the BOR, and the BOR and the City do not have a contract and are not currently negotiating a contract.  *See Strawberry Water Users Ass'n v. United States*, 576 F.3d 1133, 1148 (2009) (stating that change in water use from irrigation to municipal use requires consent of Interior Secretary).  In addition, the BOR asserts that under the Warren Act, it cannot enter into a conversion contract with the City unless it affirmatively determines that 1) "there is no other practicable source of water supply" for the City; 2) "delivery of such water shall [not] be detrimental to the water service for such irrigation project or to the right of any prior appropriator;" and 3) the affected water users' association approves of the conversion.  43 U.S.C. § 521.

Significantly, the contingencies related to the City's Ag/MI conversion of Project water are at issue in Case No. 00 CV 1309.  In that case, the City has argued that the Warren Act does require the BOR's involvement in the City's Ag/MI plan because only state law governs the Ag/MI conversion of Project water once that water is allocated to EBID.  *See* NMSA 1978 § 73-10-48 (B) (2000) (allowing municipalities to become special water users' associations and to lease irrigation water rights).  Because, the City's plan to convert Project water to municipal water is contingent on the outcome of its claims in Case No. 00 CV 1309, the Court finds that

13

the City's right to convert Project water in the future does not support intervention in this action.

However, the City's second asserted interest is sufficient to support intervention.  The City contends that when EBID receives less than its proper share of Credit Water, its irrigators divert more water from the Aquifer.  Thus, the City's primary source of water is threatened.  The BOR does not dispute this contention.  The City has a significant interest in the sustainability of the Aquifer as its primary water source.  In addition, the City has shown that the disposition of this action may as a practical matter impair or impede its ability to protect its interest due to the direct connection between the allocation of Project water and the depletion of the Aquifer.  *See Utah Ass'n of Counties*, 255 F.3d at 1253 (stating that a would-be intervenor must show that impairment of its substantial legal interest is possible if intervention is denied).  Thus, the City has shown that it has the requisite "substantial legal interest" that might be impaired by this litigation.

### 2.  The City's Interest Is Not Adequately Represented

The BOR contends that even if the City's water rights are negatively affected by the allocation of surface water from the Project, the City's interest is adequately represented by Plaintiff.  Both Plaintiff and the City assert that the allocation of Project water impacts the Aquifer.  (Mot. ¶ 12; Am. Compl. ¶ 1.)  And, both Plaintiff and the City claim that the BOR's attempt to follow the requirements of NEPA were inadequate.  (Mot. ¶ 19; Am. Compl. ¶ 79.)  However, Plaintiff generally argues that the misallocation of Rio Grande Project water threatens the interdependent ecosystem related to the Rio Grande, and Plaintiff refers to the effect on the Aquifer as only one of many areas of concern.  Plaintiff generally alleges, "the harm complained of threatens the sustainable riverine environment, and the environment, the flora and fauna that rely on the Rio Grande and its connected groundwater."  (Am. Compl. ¶ 1.)  Plaintiff alleges,

14

"[u]nless the relief prayed for herein is granted, New Mexico, its citizens and wildlife, fisheries, aquifers and associated interdependent ecosystems will continue to suffer on-going harm."  (Am. Compl. ¶ 7.)  In its Amended Complaint, Plaintiff mentions groundwater or the Aquifer in only these two statements, and the references are general.  The City argues that no other party adequately represents its specific interest in the Aquifer.  The City's rights are vested and adjudicated rights evidenced by State Engineer Permit Nos. LRG-3283-3285, LRG 3288-3296, LRG-389, LRG-399, LRG 5818-S-4, LRG 5818-S-6 through S-10, and LRG-3275 through LRG-3282. (Prop. Compl. ¶ 17.)  These permits were declared by the State Engineer on September 11, 1981, under NMSA 1978 § 72-12-1 (1931) (declaring that groundwater belongs to the public and is subject to appropriation for beneficial use); and § 72-12-3 -- 72-12-28 (describing groundwater permitting process).  The Court finds that the City has shown its unique interest in protecting the Aquifer that is not specifically represented by Plaintiff.

As for its NEPA claim, the City alleges that the FONSI issued in June 2007 "did not result from a public comment period including the City, did not address the issues on concern to the City, i.e., the sustainability of the aquifer where the City's groundwater rights are located, . . ." (Prop. Compl. Count 1, ¶ 6.)   Plaintiff does not refer to the Aquifer in its NEPA claim, and Plaintiff only generally alleges that the BOR's violations of NEPA threaten "serious prejudice and injury to Plaintiffs' rights and interests."  (Am. Compl. ¶ 87.)  The City's sole claim is its NEPA claim, and the City's claim has a distinct focus on the effect that allocations of Project water have on the Aquifer.  Thus, the Court finds that the City has met its burden under Rule 24(a) to show its interest in the Aquifer is not adequately represented by Plaintiff.

B.  Permissive Intervention

The City may also intervene under Rule 24(b) because the City has a "claim that shares

with the main action a common question of law or fact," whether the BOR undertook the proper

actions under NEPA when it implemented the operational changes and executed the 2008

Agreement, and that the other parties do not adequately represent the City's interest.  Therefore,

the City also meets the requirements for permissive intervention.

       IT IS ORDERED that THE CITY OF LAS CRUCES' MOTION TO INTERVENE (Doc.

No. 31) is granted.

_____
SENIOR UNITED STATES DISTRICT JUDGE